OPINION
{¶ 1} Defendant-appellant Carlos Kolb appeals from his conviction and sentence for Possession of Crack Cocaine, in an amount greater than five grams, but less than ten grams, following a no-contest plea. Kolb contends that the trial court erred by denying his motion to suppress, upon the grounds that evidence was obtained from his person as a result of an unlawful stop and weapons frisk. Although the issue is close, we conclude that the totality of the circumstances did not support a reasonable and articulable suspicion justifying a brief, investigative stop. Accordingly, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings in accordance with this opinion.
 I {¶ 2} Dayton police officer Paul Price was dispatched at about 7:00 one morning in late October, 2003, to check on reports of suspicious activity taking place inside a vehicle. As a result of his contact with the persons inside that vehicle, he arrested two of them, one on an outstanding warrant and one for Possession of a Crack Pipe, while releasing the third. As he was releasing the third person, Kolb came to his attention. Price's testimony concerning his initial encounter with Kolb is as follows:
 {¶ 3} "A. From that vehicle. I was up by her vehicle when suddenly a white male came running — running out of the alley northbound and came right up towards us.
 {¶ 4} "Q. Okay. Now, when he came out of that, out of the alley, how far away was he from you?
 {¶ 5} "A. Probably about 15 feet when I realized he was there.
 {¶ 6} "Q. Okay. And you indicated he was running. You mean full speed or —
 {¶ 7} "A. Pretty close.
 {¶ 8} "Q. Okay. And what was his reaction upon seeing you?
 {¶ 9} "A. The look on his face, I think, was shock and surprise, and he just stopped suddenly. He immediately jammed his hands in his shorts pockets, and he said, what's going on. And he was real, real nervous looking, acting.
 {¶ 10} "Q. And what kind of clothing was he wearing?
 {¶ 11} "A. He was wearing some shorts, and they were kind of big and baggy, and he was also wearing, I can't remember exactly, but it was big kind of a sweatshirt.
 {¶ 12} "Q. And after he came around and shoved his hands in his pants, or in his pockets of his shorts and asked you what was going on, what did you then do?
 {¶ 13} "A. I immediately told him to get his hands out of his pockets.
 {¶ 14} "Q. And did he, in fact, remove his hand from his pockets?
 {¶ 15} "A. He did comply with that.
 {¶ 16} "Q. And could you — did you notice anything about his pockets at that time, or his pants?
 {¶ 17} "A. There was a lot of things — they were hanging, they were big on him, and the one pocket was full of a lot of stuff.
 {¶ 18} "Q. Okay. Did that give you any cause for concern at all?
 {¶ 19} "A. It did.
 {¶ 20} "Q. In what regard?
 {¶ 21} "A. The possibility of any weapons on him.
 {¶ 22} "Q. Okay. And did you then approach that individual?
 {¶ 23} "A. I did.
 {¶ 24} "Q. And what did you do at that point?
 {¶ 25} "A. I patted him down, his outer clothing, for my safety.
 {¶ 26} "Q. And when you patted him down for your safety, did you notice anything in his pockets that gave you cause for concern or —
 {¶ 27} "A. Yes. I could quite easily make out a can of Skoll, but right directly on top of that was a fairly large baggy of what I believed was crack cocaine. Also a large set of keys was in that pocket.
 {¶ 28} "Q. Now, when you say you believed it to be crack cocaine, do you mean — did you go into his pocket and pull it out to know that it was crack cocaine, or as you were patting him down did you —
 {¶ 29} "A. Not — not at time. Immediate upon the touch of the outer clothing I could tell by the pebble-shaped feel it was — it felt like a baggy of crack cocaine. In my experience working Dayton for 12 years, I've dealt with it quite frequently."
 {¶ 30} Kolb was arrested and subsequently indicted for Possession of Crack Cocaine. He moved to suppress the evidence obtained during the pat-down. Following a hearing, this motion was denied. Thereafter, Kolb pled no contest, was found guilty, was sentenced to a one-year prison term, and his driver's license was suspended for six months.
 {¶ 31} From his conviction and sentence, Kolb appeals.
 II {¶ 32} Kolb's sole assignment of error is as follows:
 {¶ 33} "The trial court erred when it overruled defendant's motion to suppress due to the fact that defendant-appellant was the subject of an unreasonable and warrantless search and seizure as provided by the fourth and fourteenth amendments of the constitution of the united states, supreme court of the united states and the state of ohio and said search did not fall under any of the exceptions to the warrant requirement."
 {¶ 34} In order to stop and briefly detain a person for purposes of criminal investigation, a law enforcement officer must have a reasonable and articulable suspicion of criminal activity. Terry v. Ohio (1968),392 U.S. 1. That standard "* * * entails some minimal level of objective justification for making a stop — that is, something more than an inchoate and unparticularized suspicion or hunch, but less than the level of suspicion required for probable cause." State v. Jones (1990),70 Ohio App.3d 554, 556-557. Whether the officer who performed the detention acted on that authority in any specific case must be determined from the totality of the circumstances, giving due deference to how the facts before him were perceived by the officer on the scene. State v.Shepherd (1997), 122 Ohio App.3d 358.
 {¶ 35} State v. Andrews (1991), 57 Ohio St.3d 86, a case cited by the State, provides a useful basis for comparison. In both cases, the stop occurred in October. In Andrews, it took place at 8:35 p.m. in an "extremely dark" and secluded courtyard, in an area of Dayton known as "high in drug activity, violence, and weapons-related crime." Id., at 86, 88. The officer who performed the stop was aware of numerous police activity reports concerning the area. The man who was stopped had been running from the direction in which a police cruiser was located, and the officer who performed the stop, "believing that the man may have been running away from the police cruiser, and fearing for his own safety, told the man to put up his hands" and stopped him. Id., at 86. A subsequent pat-down yielded a gun.
 {¶ 36} Here, the man who was detained seemed surprised to see the officer, but made no effort to evade contact with him. The encounter took place shortly after 7:00 a.m., on a public street or sidewalk, and there was no testimony indicating that it was dark at that time. The State offered no evidence that it occurred in a high-crime area, or that the man was believed to have any connection with any crime, including the crime for which Officer Price had just arrested another person. The man merely "jammed" his hands in his pockets, saying: "What's going on?" When told to remove his hands, he did, revealing that one pocket, "was full of stuff." From that, the officer deduced that the man, Kolb, "might have weapons on him."
 {¶ 37} An officer who has detained a person for investigation of suspected criminal activity may perform a limited pat-down search of his person for weapons "where (the officer has reason to believe that he is dealing with an armed and dangerous individual * * *; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger * * *. And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to inchoate and unparticularized suspicion or `hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." Terry, 88 S.Ct. 1868, 1883.
 {¶ 38} The State offered no evidence showing how or why the officer had some reason to fear for his safety or the safety of others. The officer merely testified that he was concerned about "[t]he possibility of any weapons on him," which is not an explanation, but merely an announcement of a conclusion the officer reached. In view of the lack of any indication of criminal activity on the part of the Defendant, all we are left with is the fact that when the Defendant removed his hands from his pocket as directed, "one of his pockets was bulging with stuff." That any of the stuff was a weapon was no more than an unparticularized and inchoate hunch.
 {¶ 39} This court has a long history of concern for officer safety, and we tend to credit any legitimate fact or circumstance that justifies a weapons pat-down. However, we cannot rely merely on the officer's own conclusion that he was in fear for his safety. That must be substantiated by some form of objective fact, even in a circumstantial way. Where none is shown, Terry requires us to find that the warrantless pat-down search was illegal, so that its fruits must be suppressed.
 {¶ 40} Kolb's sole assignment of error is sustained.
 III {¶ 41} Kolb's sole assignment of error having been sustained, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings.
Grady and Donovan, JJ., concur.