OPINION
{¶ 1} Defendant-appellant Ramon Boyce appeals from his conviction and sentence for burglary, tampering with evidence and receiving stolen property. He contends that the trial court erred by denying his motion to suppress evidence that was obtained during an unlawful search and seizure. He also contends that the trial court erred in sentencing.
 {¶ 2} We conclude that the totality of the circumstances did not support a reasonable and articulable suspicion justifying a pat-down search of Boyce. We also conclude that the investigatory stop was then unreasonably prolonged when Boyce was detained an additional thirty minutes and transported to police headquarters, while waiting to determine whether a watch found in his pocket might have been stolen in a burglary that had just happened in the vicinity. Thus, any evidence obtained during the pat-down and detention should have been suppressed.
 {¶ 3} We further conclude that any error in sentencing has been rendered moot. Accordingly, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings consistent with this opinion.
 I {¶ 4} During the fall of 2005, the Springfield Police Department was investigating a series of burglaries that had occurred in the northwestern part of the city. Ramon Boyce was identified as a suspect. On October 31, at about 8:00 a.m., Officer Paula Rich was patrolling a neighborhood where a number of the burglaries had occurred, when she observed Ramon Boyce walking in the area. When Rich got to a cul-de-sac into which Boyce had turned, he was nowhere to be seen, suggesting to Rich that Boyce *Page 3 
had left the road to travel through residential yards. Following Rich's report, several officers responded and set up a perimeter watch in the area. Detective Robert Jacobs was one of the officers who parked in the area to observe the neighborhood. While there, at 9:00 a.m., Jacobs received a report of a burglary that had occurred approximately "four to five blocks down and one and one-half blocks up" from his location. He remained in his location to continue surveillance of the area.
 {¶ 5} Approximately ten minutes later, Jacobs observed Boyce walking on the sidewalk. Jacobs approached Boyce, placed him in handcuffs and conducted a pat-down search of Boyce's person. During the pat-down, Jacobs removed a wristwatch from the pocket of Boyce's pants. Boyce said that the watch belonged to him. Jacobs then informed Boyce of his Miranda rights and placed him in the police vehicle. Jacobs then informed other officers about the watch. Boyce was detained at that location for approximately thirty minutes, while other officers investigated the watch. Boyce was then taken to police headquarters, where he was again informed of his Miranda rights and questioned further. The questioning was recorded on a video tape. During the questioning, Boyce's shoes were confiscated in order to determine whether they matched shoe prints at the crime scene. It was determined that the watch found on Boyce's person had belonged to an individual residing in the house that had just been burglarized. Boyce was then arrested and charged with burglary.
 {¶ 6} Subsequently, Boyce was indicted on six counts of burglary, eights counts of receiving stolen property and one count of tampering with evidence. Boyce filed a motion to suppress the evidence consisting of his watch, shoes and the subsequent video-taped statement. Following a hearing, the trial court overruled the motion based *Page 4 
upon the following findings:
 {¶ 7} "A reasonable, prudent person in Detective Jacob's position could certainly believe that his safety, or the safety of others, was threatened when he stopped the defendant. It was reasonable for Detective Jacobs to believe that the defendant had just committed a burglary and that he was armed. Accordingly, Detective Jacobs was justified in patting the defendant to see if he had any weapons on his person. Furthermore, it is reasonable to believe that a hard object, like a watch, could be a knife or some other kind of weapon. Therefore, Detective Jacobs was justified in removing the watch from the defendant's left front pants pocket.
 {¶ 8} "Handcuffing the defendant in the course of Detective Jacobs' `stop and frisk' did not convert the detention into an arrest since the handcuffing was reasonable under the circumstances. The restraint was temporary and lasted no longer than was necessary for Detective Jacobs to determine if the watch had been removed from the burglarized home. Handcuffing the defendant maintained the status quo and prevented the defendant from fleeing. Once the victim identified the watch, probable cause existed for an arrest."
 {¶ 9} Following trial, Boyce was found guilty of tampering with evidence, one count of burglary, and all eight counts of receiving stolen property. He was sentenced to consecutive, non-minimum sentences for a total imprisonment term of seventeen years. From his conviction and sentence, Boyce appeals.
 II {¶ 10} Boyce's First Assignment of Error states as follows: *Page 5 
 {¶ 11} "THE TRIAL COURT ERRED IN ADMITTING EVIDENCE OBTAINED AS THE RESULT OF AN UNREASONABLE, WARRANTLESS SEARCH AND SEIZURE. FOURTH ANDFOURTEENTH AMENDMENTS, UNITED STATES CONSTITUTION."
 {¶ 12} Boyce argues that the frisk conducted by Detective Jacobs was not warranted under the circumstances. He also contends that it was not reasonable to take him into custody and detain him for thirty minutes in order to determine whether the watch found in his pocket was stolen.
 {¶ 13} We begin by noting that when reviewing a trial court's decision on a motion to suppress, we are bound by the trial court's findings of fact if they are supported by competent, credible evidence in the record. State v. Retherford (1994), 93 Ohio App.3d 586, 592. We then must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard. Id.
 {¶ 14} Boyce does not contest the initial stop made by Detective Jacobs. He contends that the subsequent pat-down and prolonged detention were improper. The State argues that the officers had reasonable suspicion, pursuant to Terry v. Ohio (1968), 392 U.S. 1, to stop and frisk Boyce for weapons.
 {¶ 15} "Even when an investigatory stop and detention of a suspect is justified, it does not follow that a frisk for weapons is also warranted." State v. Carter, Montgomery App. No. 21145, 2006-Ohio-2823, ?16. The Ohio Supreme Court has stated that "the frisk, or protective search, approved in Terry is limited in scope to a pat-down search for concealed weapons when the officer has a reasonable suspicion that the individual whose behavior he is investigating at close range may be armed and dangerous. * * * While probable cause is not required, the standard to perform a protective search, like *Page 6 
the standard for an investigatory stop, is an objective one based on the totality of the circumstances. * * * The rationale behind the protective search is to allow the officer to take reasonable precautions for his own safety in order to pursue his investigation without fear of violence." State v. Andrews (1991), 57 Ohio St.3d 86, 89.
 {¶ 16} In this case, when questioned as to whether he intended to arrest Boyce when he observed him walking toward him, Detective Jordan testified:
 {¶ 17} "No, not initially `cause not knowing what was going on [at the crime scene], I didn't feel enough — I didn't know what kind of evidence, what kind of witnesses so I felt that if he was involved, which was more than likely, I wanted to make sure he got cuffed — before he-if he decided to run or anything like that."
 {¶ 18} When explaining why he decided to handcuff Boyce, Jacobs testified that it is his normal procedure. He further testified as follows:
 {¶ 19} "Dealing with the circumstances, if I felt that something might be involved for something in my own safety, not knowing if he had any kind of weapon on him, if he was going to run or what the situation was, it's something we do. We cuff people for our own safety to make sure everything's okay. At the time I was by myself, and Officer Rich showed up after at the scene there with me. But at the time since it was myself, I didn't know what was going on. I cuffed him for that reason."
 {¶ 20} Rich testified that she arrived at the scene as Jacobs was handcuffing Boyce.
 {¶ 21} Later, when Jacobs was asked why he considered Boyce a safety risk Jacobs replied, "I've learned on 20 years on the department that anybody shape, size, or form can cause you harm if they really want to. It doesn't matter if it's a small kid, a *Page 7 
girl, a lady, or a minister. Things could happen; and instead of taking chances, I was by myself at the time. And I approached him, I felt it was necessary to do that for my own safety. Not knowing what was going on."
 {¶ 22} Nothing in Jacobs's testimony presents a specific fact indicating why the officer had reason to believe that Boyce was an armed and dangerous individual. Indeed, the State failed to present any evidence demonstrating that Jacobs had some particularized reason to fear for his safety. The evidence merely established that handcuffing individuals was routine for Jacobs. This is the antithesis of the particularized basis for believing that Boyce was armed or dangerous, required for a pat-down search.
 {¶ 23} "This court has a long history of concern for officer safety, and we tend to credit any legitimate fact or circumstance that justifies a weapons pat-down." State v. Kolb, Montgomery App. No. 20601,2005-Ohio-1209, ?39. "However, we cannot rely merely on the officer's own conclusion that he was in fear for his safety." Id. "That must be substantiated by some form of objective fact, even in a circumstantial way." Id.
 {¶ 24} We conclude that the warrantless pat-down of Boyce was done in contravention of Terry, and was thus illegal. Therefore, all evidence gleaned from that frisk should have been suppressed by the trial court.
 {¶ 25} We further conclude that it was unreasonable for Jacobs to detain Boyce for over thirty minutes, indeed transporting him to police headquarters, while attempting to determine whether the watch recovered from the illegal frisk was stolen. Given that Jacobs had no authority to conduct the pat-down search and that there was no probable cause for an arrest, we conclude that there was no reasonable suspicion to justify the *Page 8 
expanded investigation and the prolonged detention. Thus, any evidence garnered during the detention was inadmissible and should have been suppressed.
 {¶ 26} Boyce's First Assignment of Error is sustained.
 III {¶ 27} Boyce's Second Assignment of Error is as follows:
 {¶ 28} "THE TRIAL COURT DENIED MR. BOYCE DUE PROCESS OF LAW, BY SENTENCING HIM TO NON-MINIMUM AND CONSECUTIVE TERMS OF IMPRISONMENT, IN VIOLATION OF THE EX POST FACTO DOCTRINE. FIFTH ANDFOURTEENTH AMENDMENTS, ARTICLE I, SECTION X, UNITED STATES CONSTITUTION."
 {¶ 29} Boyce contends that the trial court erred by sentencing him to consecutive, non-minimum sentences. This argument has been rendered moot by our resolution of the First Assignment of Error.
 {¶ 30} The Second Assignment of Error is overruled as moot.
 IV {¶ 31} Boyce's First Assignment of Error having been sustained, and his Second Assignment of Error having been overruled as moot, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings consistent with this opinion.
 WOLFF, P.J., and Walters, V.J., concur. *Page 9 
(Hon. Sumner E. Walters, retired from the Third Appellate District, sitting by (assignment of the Chief Justice of the Supreme Court of Ohio) *Page 1