JOURNAL ENTRY AND OPINION *Page 2 
{¶ 1} Plaintiff-appellant, the State of Ohio, appeals the judgment of the trial court granting the motion to suppress of defendant-appellee, Terrance D. Prevo. We affirm.
 {¶ 2} Appellee was indicted on September 28, 2004 for one count of carrying a concealed weapon, a felony of the fourth degree in violation of R.C. 2923.12. At the suppression hearing, Officer Eugina Gray testified that on September 17, 2004, she and her partner, Officer Gregory Hunter, were assigned *Page 3 
to investigate a complaint of drug activity from an anonymous caller. The call was received after midnight, but Officers Gray and Hunter did not respond until 2:00 a.m.
 {¶ 3} The caller advised the police of drug activity at 7821 Redell Avenue. The officers went three doors down to 7815 Redell Avenue, however, because they saw two males on the porch at that address and one of the males, Dontonius Gartner, was wearing a shirt that matched the description given by the anonymous caller. Appellee was the other male on the porch. Gray testified that appellee voluntarily came off the porch, approached the police car and produced identification which matched the address of the house. The officers informed appellee that they were there on a complaint of drug activity and that Gartner fit the description of the individual involved. The police then asked appellee if they could go on his porch and talk to Gartner; the police claim appellee consented. Gray testified that, prior to going up on the porch, she and Hunter smelled the odor of marijuana. According to Gray, she asked appellee and Gartner "where's the weed?" and they answered that they had already smoked it. Gray testified that she and Hunter found what appeared to be a marijuana cigarette on the porch.
 {¶ 4} The officer further testified that she and Hunter looked around appellee's yard and found what appeared to be a baggie of marijuana in the bushes by the porch. Gray admitted, however, that she and Hunter did not find *Page 4 
anything lit or smoking on the porch. Neither appellee nor Gartner were cited for a drug offense. Officer Gray testified that she believed the suspected marijuana was submitted to the lab, but she did not have a report and/or know the results of the testing.
 {¶ 5} Officer Gray searched Gartner, and no contraband was recovered from him. According to Gray, while Gartner was being searched, appellee was sitting in a chair on the porch. The officer described appellee as "very comfortable, he's not acting nervous, not making any furtive movements or anything like that." Neither appellee nor Gartner had outstanding warrants. Gray testified that, nonetheless, after Gartner was searched, appellee needed to be patted down for drugs, even though he was not under arrest. When Officer Hunter told appellee that he was going to be searched, appellee, according to Gray, started "getting a little nervous" and "inching toward the door." Gray testified that after appellee "tensed up," Hunter asked him why he was so nervous and appellee responded that he had a gun in his waistband. Gray testified that appellee told the officers that he had the gun for his protection and that he had received his paycheck that day. She admitted that appellee was on his own property.
 {¶ 6} Officer Hunter also testified that appellee voluntarily came off the porch to talk with him and Gray and consented to them coming onto his porch. Hunter confirmed the odor of marijuana. Hunter's testimony differed, however, *Page 5 
from Gray's on appellee's demeanor while Gartner was being searched. According to Hunter, appellee appeared nervous during the search and made a "rush" for the front door several times. Hunter testified that after appellee's third attempt for the door, he "feared for his and Gray's safety" and, therefore, for officer safety and because of appellee's suspicious behavior, he decided to search appellee. Hunter's testimony also differed from Gray's concerning whether appellee and Gartner admitted that they had been smoking marijuana. According to Hunter, neither man indicated that they had been smoking marijuana.
 {¶ 7} Appellee also testified. According to him, he did not invite the officers on his porch. Appellee also testified that after the search of Gartner was over, Officer Gray said she and Hunter were leaving. Officer Hunter, however, said he did not trust appellee. Appellee testified that at that time, he tried to go into his house. Hunter told him that he could not go in the house. Appellee asked if he could go get his aunt, who was a police officer and used to work in the same district as Hunter. Hunter again denied appellee's request and proceeded to search him.
 {¶ 8} Appellee testified that neither he nor Gartner were smoking marijuana and denied telling the officers that they were. He further testified that he carried a gun on paydays, as he lives in a "rough" neighborhood through which he has to walk from the bus stop to his house. That day was payday and, *Page 6 
therefore, appellee had his gun. He explained that he had just arrived home from work about ten to 15 minutes before the police arrived.
 {¶ 9} In its sole assignment of error, the State contends that the trial court erred in granting appellee's motion to suppress. Appellate review of a suppression ruling involves mixed questions of law and fact.State v. Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71. When ruling on a motion to suppress, the trial court serves as the trier of fact and is the primary judge of the credibility of the witnesses and the weight of the evidence. State v. Fanning (1982), 1 Ohio St.3d 19,20, 437 N.E.2d 583. An appellate court must accept the trial court's findings of fact as true if they are supported by competent and credible evidence. Burnside, 2003-Ohio-5372, at 8. The appellate court must then determine, without any deference to the trial court, whether the facts satisfy the applicable legal standard. Id.
 {¶ 10} In its ruling, the trial court found that the police did not have probable cause based on the anonymous complaint about the residence at 7821 Redell Avenue to investigate whether there was illegal conduct at 7815 Redell Avenue. The court noted that although the area was a high crime area, the officers did not personally observe appellee or Gartner engaged in any criminal activity. The court noted that anonymous tips standing alone are generally insufficient to support a finding of reasonable suspicion because they lack the necessary indicia of reliability. The court found that, even assuming at some *Page 7 
point appellee consented to the initial intrusion, there was no suitable corroboration indicating reliability. The court further found that any consent given by appellee was revoked and the search of him therefore was not consensual.
 {¶ 11} The first step for us to determine is whether the detention was unlawful; that is, whether the officers had reasonable suspicion of criminal activity. If the stop was lawful, we must determine whether the officers had reasonable suspicion to justify the pat-down search.
 {¶ 12} A stop of an individual by a law enforcement officer is a seizure for purposes of the Fourth Amendment to the U.S. Constitution.Terry v. Ohio, (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. Law enforcement officers may briefly stop and/or detain an individual for investigation if the officers have a reasonable, articulable suspicion that criminal activity may be afoot. Reasonable suspicion is something more than an unparticularized suspicion or mere hunch, but less than the level of suspicion required for probable cause. Terry, supra. To satisfy that standard, police must be able to point to specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the intrusion. Id.
 {¶ 13} The propriety of an investigative stop or detention must be viewed in light of the totality of the surrounding facts and circumstances. State v. Bobo (1988), 37 Ohio St.3d 177, 524 N.E.2d 489. These circumstances must be viewed *Page 8 
through the eyes of a reasonable and prudent police officer on the scene, who must react to events as they unfold. State v. Andrews (1991),57 Ohio St.3d 86, 565 N.E.2d 1271. Accordingly, the court must take into consideration the officer's training and experience to understand how the situation would be viewed by an officer on the street. Id.
 {¶ 14} In State v. Ramsey (Sept. 20, 1990), Franklin App. Nos. 89AP-1298, 89AP-1299, the court stated that "[informant's tips, while they very [sic] greatly in their value and reliability, may in certain cases produce reasonable suspicion." When dealing with informant's tips, "`* * * one simple rule will not cover every situation.' * * * Each case must be decided on its own unique circumstances and any attendant indicia of reliability." Id., quoting Adams v. Williams (1972),407 U.S. 143, 147, 32 L.Ed.2d 612, 92 S.Ct. 1921.
 {¶ 15} Among the attendant circumstances, courts have traditionally looked predominantly to two factors in evaluating a tipster's information: veracity and basis of knowledge. See Ramsey, supra, citingIllinois v. Gates (1983), 462 U.S. 213, 76 L.Ed.2d 527, 103 S.Ct. 2317. Anonymous tips, therefore, may provide the reasonable suspicion necessary to make an investigatory stop if sufficiently verified by police officers. State v. Campbell (1990), 68 Ohio App.3d 688,589 N.E.2d 452.
 {¶ 16} We must determine, then, if the tip was sufficiently verified by independent police investigation. In Ramsey, supra, at 4, the court held: *Page 9 
 {¶ 17} "It is therefore clear that the simple corroboration of neutral details describing the suspect or other conditions existing at the time of the tip, without more, will not produce reasonable suspicion for an investigatory stop."
 {¶ 18} Here, the evidence showed that the officers stopped at the 7815 address, rather than the 7821 address, because Gartner had on a shirt that matched the description given by the anonymous caller. Both officers testified that they did not observe either appellee or Gartner engaged in any criminal activity. Both officers further testified, however, that after advising appellee concerning the reason for their presence, he consented to their coming onto his porch. Appellee denied ever giving such consent. Although the identification of Gartner based on the anonymous tip, without more, was not sufficient to justify an investigative stop, the officers' testimony that appellee consented to their entry onto his porch provided some competent credible evidence that their initial inquiry was permissible.
 {¶ 19} We are troubled, however, by the subsequent search of appellee. "Even when an investigatory stop and detention of a suspect is justified, it does not follow that a frisk for weapons is also warranted." State v. Carter, Montgomery App. No. 21145, 2006-Ohio-2823, ¶ 16. The Ohio Supreme Court has stated that "the frisk, or protective search, approved in Terry is limited in scope to a pat-down search for concealed weapons when the officer has a reasonable suspicion that theindividual whose behavior he is investigating at *Page 10 close range may be armed and dangerous. * * * While probable cause is not required, the standard to perform a protective search, like the standard for an investigatory stop, is an objective one based on the totality of the circumstances. * * * The rationale behind the protective search is to allow the officer to take reasonable precautions for his own safety in order to pursue his investigation without fear of violence." (Emphasis added.) State v. Andrews (1991), 57 Ohio St.3d 86,89, 565 N.E.2d 1271.
 {¶ 20} Here, both Officers Gray and Hunter described appellee as initially being very compliant, coming off his porch when they arrived at his house, producing his identification and allowing them to go onto the porch to engage in further inquiry. According to Gray, while she was searching Gartner, appellee was sitting in a chair on the porch. The officer described appellee as "very comfortable, he's not acting nervous, not making any furtive movements or anything like that." Gray testified that, nonetheless, after Gartner was searched, appellee was patted down "for drugs," even though he was not under arrest.
 {¶ 21} Hunter's testimony differed, however, from Gray's on appellee's demeanor while Gartner was being searched. According to Hunter, appellee appeared nervous during the search and made a "rush" for the front door several times. Hunter testified that after appellee's third attempt for the door, he *Page 11 
feared for his and Gray's safety and, therefore, for officer safety and because of appellee's "suspicious" behavior, he decided to search appellee.
 {¶ 22} Appellee's testimony was more in line with Gray's testimony. According to appellee, after the search of Gartner was over, Officer Gray said she and Hunter were leaving. Officer Hunter, however, said he did not trust appellee. Appellee testified that at that time, he tried to go into his house. Hunter told him that he could not go in the house, however. Appellee asked if he could go get his aunt, who was a police officer and used to work in the same district as Hunter. Hunter again denied appellee's request and proceeded to search him.
 {¶ 23} As the Second Appellate District noted, "[t]his court has a long history of concern for officer safety, and we tend to credit any legitimate fact or circumstance that justifies a weapons pat-down."State v. Kolb, Montgomery App. No. 20601, 2005-Ohio-1209, ¶ 39. "However, we cannot rely merely on the officer's own conclusion that he was in fear for his safety." Id. "That must be substantiated by some form of objective fact, even in a circumstantial way." Id. The record in this case does not substantiate Officer's Hunter testimony that appellee was searched for officer safety. We therefore conclude that the warrantless search of appellee was in contravention of Terry, and thus was illegal. *Page 12 
 {¶ 24} The State's sole assignment of error is overruled and the judgment of the trial court is affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MARY J. BOYLE, J., CONCURS SEAN C. GALLAGHER, P.J., CONCURS IN JUDGMENT ONLY. *Page 1