[Cite as *State v. Sweeney*, 2012-Ohio-3152.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 97414**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## SEYMOUR SWEENEY

DEFENDANT-APPELLANT

## JUDGMENT:
## REVERSED AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-549567

**BEFORE:** Kilbane, J., Boyle, P.J., and Cooney, J.

**RELEASED AND JOURNALIZED:** July 12, 2012

**ATTORNEY FOR APPELLANT**

Michael A. Partlow
112 South Water Street, Suite C
Kent, Ohio 44240

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor
James M. Price
Assistant County Prosecutor
The Justice Center - 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY EILEEN KILBANE, J.:

{¶1} Defendant-appellant, Seymour Sweeney ("Sweeney"), appeals the trial court's judgment denying his motion to suppress. For the reasons set forth below, we reverse and remand.

{¶2} In May 2011, Sweeney was charged with drug trafficking and drug possession. In July 2011, Sweeney filed a motion to suppress the evidence obtained against him. Specifically, he argued that he "was not engaged in any activity that * * * could give rise to reasonable, articulable suspicion for [the] stop" by Cleveland police officers. The trial court held a hearing on the motion on August 3, 2011, at which the following evidence was adduced.

{¶3} At approximately 10:00 p.m. on April 21, 2011, officers from the Cleveland Police Department executed a temporary restraining order at The Gotcha Inn, a bar located on Lakeside Avenue in Cleveland, Ohio. Lieutenant Jerome Barrow ("Barrow") of the Third District Vice Unit testified that he was assigned the task of enforcing the restraining order issued by Cuyahoga County Common Pleas Court. He testified that The Gotcha Inn is known for illegal drug activity and shootings. He noted that in the past year, the Gotcha Inn had over 30 civil violations and approximately four felony arrests. The SWAT team was first on the scene for officer safety. The SWAT team entered the bar followed by Barrow, Detective Erin O'Donnell ("O'Donnell") of the

Third District Vice Unit, and uniformed officers from the community service unit.

{¶4} Barrow testified that there were approximately 50 to 75 patrons in the bar when they arrived. Barrow reviewed the temporary restraining order prior to executing it and testified there was nothing stated in the order that led him to believe that he could detain all of the bar patrons. However, the officers still decided to detain "everyone at the bar * * * because of the past history of the bar and for officer protection[.]"

{¶5} Sweeney was one of the patrons at The Gotcha Inn that evening. Cleveland police officers did a patdown search of Sweeney and all of the other bar patrons for weapons. They did not find any weapons or contraband on Sweeney's person or any of the other bar patrons. At this point, the bar was secured. Then, the officers further detained Sweeney and all other patrons by asking them for their identification. The sole purpose for the identification was to check for outstanding warrants. The officers ran Sweeney's driver's license through a computer in a zone car. The identification check revealed that Sweeney had an active warrant for contempt of court in a driving under suspension case. Barrow testified that Sweeney was detained for approximately ten minutes while the police completed the identification check. During this time, Sweeney was asked to remain in the bar. As a result of the active warrant, the police officers arrested Sweeney. The officers again did a patdown search of Sweeney before placing him in the police cruiser and found a black plastic bag and crack cocaine in his pocket.

{¶6} O'Donnell testified that she assisted with the task of enforcing the

restraining order on The Gotcha Inn that evening. She testified that she has been a police officer for almost 14 years and this was the first time she executed a temporary restraining order on a bar. O'Donnell testified that all the bar patrons were patted down for officer safety "[d]ue to the numerous shootings that had occurred in the area[.]" After the search revealed no weapons, the bar was secured. The officers then further detained everyone for approximately 15 minutes solely to check for outstanding warrants on all patrons. When asked if she was able to observe Sweeney's behavior before he was arrested, O'Donnell stated: "[n]ot real well. But [Sweeney] was a little bit fidgety. * * * Like he did not want to be there." O'Donnell further testified that the bar patrons were only allowed to leave if they did not have any outstanding warrants.

{¶7} According to Sweeney's appellate brief, the court denied his motion to suppress on August 5, 2011. Sweeney then pled no contest to the indictment, and the trial court found him guilty of the charges. The trial court sentenced him to a total of four years in prison.

{¶8} Sweeney now appeals, raising the following single assignment of error for review.

ASSIGNMENT OF ERROR

The trial court erred, as a matter of law, by denying [Sweeney's] motion to suppress the evidence.

{¶9} As an initial matter, plaintiff-appellee, the state of Ohio ("State"), notes that there is no journal entry stating that Sweeney's motion to suppress was denied. The State requests that we disregard Sweeney's assignment of error because his argument is

conjecture. However, this court has found that if "there is no journal entry indicating appellant's motion to suppress * * * was denied, we presume the trial court denied said motion when the record is silent as to a ruling. When a trial court fails to rule on a motion, the motion is considered denied." *State v. Howell*, 8th Dist. No. 91569, 2009-Ohio-3092, fn. 1, citing *Solon v. Solon Baptist Temple, Inc.*, 8 Ohio App.3d 347, 457 N.E.2d 858 (8th Dist.1982), and *Georgeoff v. O'Brien*, 105 Ohio App.3d 373, 378, 663 N.E.2d 1348 (9th Dist.1995). Therefore, based on the record before us, Sweeney's motion to suppress is considered denied, and we next address the merits of Sweeney's appeal.

{¶10} In reviewing a trial court's ruling on a motion to suppress, the reviewing court must keep in mind that weighing the evidence and determining the credibility of witnesses are functions for the trier of fact. *State v. DePew*, 38 Ohio St.3d 275, 277, 528 N.E.2d 542 (1988); *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). A reviewing court is bound to accept those findings of fact if supported by competent, credible evidence. *See State v. Curry*, 95 Ohio App.3d 93, 96, 641 N.E.2d 1172 (8th Dist.1994), citing *State v. Schiebel*, 55 Ohio St.3d 71, 564 N.E.2d 54 (1990). The reviewing court, however, must decide de novo whether, as a matter of law, the facts meet the appropriate legal standard. *Id.*; *see also State v. Claytor*, 85 Ohio App.3d 623, 627, 620 N.E.2d 906 (4th Dist.1993).

{¶11} Sweeney argues that he was detained without any reasonable and articulable suspicion that he was engaged in any criminal activity. Thus, he contends that the drugs

found on his person were the fruit of the poisonous tree and should have been suppressed.

The State, on the other hand, argues that the officers' patdown of the bar patrons was justified because the officers had reasonable and articulable suspicion that the patrons might be armed due to The Gotcha Inn's reputation for illegal drug activity and shootings.

{¶12} The Fourth and Fourteenth Amendments to the United States Constitution prohibit warrantless searches and seizures. Unless an exception applies, warrantless searches are per se unreasonable. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). One exception is an investigative stop. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Under *Terry*, a police officer may perform a patdown search for weapons where the officer reasonably concludes that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous. *Id.* at 27. The existence of reasonable suspicion is based upon an objective and particularized suspicion that criminal activity was afoot and must be based on the totality of the surrounding circumstances. *State v. Andrews*, 57 Ohio St.3d 86, 87, 565 N.E.2d 1271 (1991). An officer need not testify he was actually in fear of a suspect, but he must articulate a set of particular facts that would lead a reasonable person to conclude a suspect may be armed and dangerous. *State v. Evans*, 67 Ohio St.3d 405, 413, 1993-Ohio-186, 618 N.E.2d 162.

{¶13} The State claims that the police had reasonable and articulable suspicion that the patrons in the bar might be armed because The Gotcha Inn is known for illegal drug activity and shootings. However, "[e]ven in high crime areas, where the possibility that

any given individual is armed is significant, *Terry* requires reasonable, individualized suspicion before a frisk for weapons can be conducted." *Maryland v. Buie*, 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276, fn. 2 (1990). The fact that the bar is known for criminal activity or located in a high-crime area

> "do[es] not diminish the requirements of the Fourth Amendment or its interpretation in *Terry*. The facts and circumstances before the officer must yet reasonably suggest that some specific criminal misconduct is afoot. That specificity requirement focuses on the criminal character of the act, not on its setting. Acts that are essentially neutral or ambiguous do not become specifically criminal in character because they occur in a high-crime area. Acts that are not specifically criminal in character do not become criminal because they are inapposite to their setting and, therefore, 'suspicious.' The setting can inform the officer's judgment, but it does not make the act criminal. In order to detain an individual to investigate for crime, some nexus between the individual and specific criminal conduct must reasonably exist and must be articulated by the officer."

*State v. Locklear*, 8th Dist. No. 90429, 2008-Ohio-4247, ¶ 29, quoting *State v. Maldonado*, 2d Dist. No. 13530, 1993 WL 402772 (Sept. 24, 1993).

**{¶14}** In the instant case, the officers failed to articulate any nexus between Sweeney and any suspicious criminal conduct justifying the continued detention solely to check for outstanding warrants. The record reveals that at 10:00 p.m., several Cleveland police officers, including members from the SWAT team, vice unit, and community service unit, went to The Gotcha Inn to execute a temporary restraining order stemming from a civil nuisance case. Significantly, the officers executed the temporary restraining order to shut down the bar in the evening when it was full with patrons. The officers were not at The Gotcha Inn because of a criminal search warrant, which has a more stringent standard, requiring probable cause and supporting evidence that a crime is being

committed.

{¶15} Barrow candidly testified that the temporary restraining order did not specifically state anything that led him to believe that he could detain all of the bar patrons. Rather, everyone at the bar was detained because of the past history of the bar and for officer protection. O'Donnell testified that none of the 50-75 bar patrons were free to leave when police asked the patrons to take their hands from their pockets and patted them down for officer safety.

{¶16} The officers initially patted down Sweeney and all of the other patrons and did not find any weapons. We recognize that in a liquor establishment officers have authority to make a brief investigatory stop for the limited purpose of ascertaining compliance with the liquor control laws of R.C. Chapter 4301, such as underage drinking. *State v. Bailey*, 30 Ohio App.3d 44, 47, 506 N.E.2d 256 (1st Dist. 1985). In the instant case, the bar was secured for officer safety, and it was established that Sweeney was of legal drinking age. Subsequently, the officers' interaction with Sweeney should have ended at this point. Instead, however, the officers further detained Sweeney solely to check for outstanding warrants.

{¶17} Sweeney was detained for approximately 15 minutes while the police completed the identification check. Sweeney was not free to leave during this time. The officers arrested Sweeney because of the active warrant. The officers did a patdown search of Sweeney a second time before placing him in the police cruiser and found a black plastic bag and crack cocaine in his pocket. Apart from the general reputation of

the area, the officers failed to connect Sweeney to any criminal conduct justifying the continued detention to check for outstanding warrants. As this court stated in *Locklear*, 8th Dist. No. 90429, 2008-Ohio-4247:

> "While the greater incidence of crime in an area is likely to make searches performed there more productive of arrests, that corresponding probability permits no greater governmental intrusion than the Fourth Amendment allows elsewhere. In all instances, absent a warrant, the facts before the officer must reasonably suggest that some specific criminal misconduct is afoot. Otherwise, law enforcement officers may not invade the right to personal security and privacy that the Fourth Amendment was designed to protect." *Maldonado* at [*10], citing *U.S. v. Porter* (C.A.8, 1987), 818 F.2d 679, certiorari denied 484 U.S. 1006, 108 S.Ct. 700, 98 L.Ed.2d 651 (1984). This court has a long history of concern for officer safety, and we tend to credit any legitimate fact or circumstance that justifies a weapons pat-down. However, the record must contain evidence that the officer was reasonably in fear for his safety and that fear must be substantiated by some form of objective fact, even in a circumstantial way. *See State v. Prevo*, Cuyahoga App. No. 88968, 2007-Ohio-5452, at ¶ 23.

*Locklear* at ¶ 36.

{¶18} Moreover, we find the court's reasoning persuasive in *State v. Gilmer*, 5th Dist. No. 2009 CA 00283, 2010-Ohio-4631. In *Gilmer*, Canton police went to D'Elegance Bar to determine if it had a valid liquor license. Canton police had received calls that the night before an employee of the bar had a gun and several bags of pills in the bar. When the police entered the bar, there were eight patrons in the bar. The police asked all of the patrons to produce identification to prove that they were over the age of 21. The defendant was unable to produce identification. The police then patted down the defendant for weapons. When the officer patted down the defendant, he felt a large sum of money and a bag of marijuana in defendant's pocket. The defendant filed a

motion to suppress, which the trial court denied.

{¶19} In reversing the trial court's decision, the *Gilmer* court relied primarily on *Ybarra v. Illinois*, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979). *Id.* at ¶ 39-40. The *Gilmer* court noted that:

> In *Ybarra*, police officers had a search warrant to search a public tavern and a bartender for narcotics. When the officer entered the bar, they announced that they were also going to search the patrons for weapons. One of the officers frisked Ybarra, who was one of the patrons, twice and removed a cigarette pack containing several packets of heroin from his pocket. The United States Supreme Court held that the pat-down search of Ybarra was unconstitutional under *Terry* * * * because the warrant did not authorize a search of the patrons and officers did not have reasonable suspicion to frisk Ybarra. *Ybarra*, 444 U.S. at 90-93. The United States Supreme Court, in *Ybarra*, stated, in relevant part, as follows: "The initial frisk of Ybarra was simply not supported by a reasonable belief that he was armed and presently dangerous, a belief which this Court has invariably held must form the predicate to a pat-down of a person for weapons. *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612; [*Terry*, 392 U.S. at 21-24.] When the police entered the Aurora Tap Tavern on March 1, 1976, the lighting was sufficient for them to observe the customers. Upon seeing Ybarra, they neither recognized him as a person with a criminal history nor had any particular reason to believe that he might be inclined to assault them. Moreover, as Police Agent Johnson later testified, Ybarra, whose hands were empty, gave no indication of possessing a weapon, made no gestures or other actions indicative of an intent to commit an assault, and acted generally in a manner that was not threatening. At the suppression hearing, the most Agent Johnson could point to was that Ybarra was wearing a 3/4-length lumber jacket, clothing which the State admits could be expected on almost any tavern patron in Illinois in early March. In short, the State is unable to articulate any specific fact that would have justified a police officer at the scene in even suspecting that Ybarra was armed and dangerous." *Id.* at 92-93 (footnote omitted).

*Gilmer* at ¶ 40.

{¶20} The *Gilmer* court found that the police "did not have a reasonable

individualized suspicion that [defendant] was armed and dangerous[,]" and "the pat-down search of [defendant] was in violation of [his] Fourth Amendment rights." *Id.* at ¶ 42. In *Gilmer*, the officer testified that he did not go to the bar to find defendant, that he had no reports that defendant was involved in any criminal activity, and that he never saw defendant with a gun. The officer testified that the only reason he believed that defendant might have a weapon on him was because defendant was nervous while everyone else at the bar "seemed to [* * *] be okay with the fact that the police are in there checking the liquor license, asking for people's identification." *Id.* at ¶ 41.

{¶21} Similarly, in the instant case, it was clear that Sweeney was not armed and dangerous because they did not find any weapons during their initial patdown and the bar was secured. The State argues that under *Terry,* the officers legally patted down Sweeney because he may have appeared "fidgety." However, just as in *Gilmer*, we do not find that this was a reasonable basis for concluding that he was engaged in criminal conduct, considering that when the SWAT team, officers from the vice unit, and uniformed officers from the community service unit entered The Gotcha Inn, the 50-75 bar patrons were not free to leave. The officers patted down all of the bar patrons, and then asked all of the patrons for their identification solely to check for outstanding warrants.

**{¶22}** Once the officers did not find any weapons, the bar was secured, and they verified that Sweeney was of legal drinking age, the officers no longer had a reasonable, individualized suspicion that Sweeney was involved in any criminal activity. As a result, we find that the officers' continued detention to check Sweeney's identification solely for outstanding warrants and the subsequent patdown search was in violation of *Terry* and thus was illegal.

**{¶23}** Accordingly, the trial court erred in denying Sweeney's motion to suppress.

**{¶24}** The sole assignment of error is sustained.

**{¶25}** Therefore, judgment is reversed and the matter is remanded to the trial court for further proceedings consistent with this opinion.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY EILEEN KILBANE, JUDGE

MARY J. BOYLE, P.J., and
COLLEEN CONWAY COONEY, J., CONCUR