[Cite as *State v. Shoulders*, 196 Ohio App.3d 178, 2011-Ohio-2659.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 95224

THE STATE OF OHIO,

APPELLEE,

v.

SHOULDERS,

APPELLANT.

JUDGMENT:
REVERSED AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-530756

BEFORE:   Keough, J., Boyle, P.J., and Sweeney, J.

RELEASED AND JOURNALIZED:   June 2, 2011

**ATTORNEYS:**

William D. Mason, Cuyahoga County Prosecuting Attorney, and W. Mona Scott, Assistant Prosecuting Attorney, for appellee.

John L. Spellacy and Albert A. Giuliani, for appellant.

KATHLEEN ANN KEOUGH, Judge.

{¶ 1}   Defendant-appellant, Christopher Shoulders, appeals from his conviction for drug trafficking.   He contends that (1) the trial court erred in denying his motion to suppress, (2) his conviction was against the manifest weight of the evidence, and (3) the prosecutor's misconduct during trial deprived him of a fair trial.   Finding merit to the appeal, we reverse and remand.

I

{¶ 2}   Shoulders was charged in a multicount indictment with one count each of drug trafficking, receiving stolen property (a gun), and possession of criminal tools (cell phones, cash, and a gun), with forfeiture and firearm specifications.   He pleaded not guilty and the matter was set for trial.   Prior to trial, Shoulders filed a motion to suppress.   The trial court subsequently held an evidentiary hearing at which the state presented the testimony of Cleveland police detective Ralph Valentino and Sergeant Ali Pillow.

{¶ 3}   Detective Valentino testified that on October 29, 2009, he and other officers from the gang-impact squad were dressed in street clothes and riding in several unmarked police cars in the area of East 84th Street and Superior Avenue.   They were looking for a suspect in a shooting that had occurred several hours earlier.

{¶ 4}   As they drove past a car wash on Superior Avenue, the officers saw a vehicle related to an ongoing investigation at the car wash.   The owner of the car, Lavelle Moore, was standing outside the vehicle.   Officers from the gang unit squad had been investigating Moore for several weeks for gang activity relating to an alleged threat made to a Cleveland Browns

football player; they were aware that he carried guns and was dangerous. According to Sergeant Pillow, the officers wanted to question Moore about the threat.

{¶ 5} Detective Valentino testified that upon seeing Moore at the car wash, he alerted the other units and then the police "entered the parking lot, exited our vehicles with our weapons drawn and ordered everybody to stay put, at that time stand still and show us their hands." Sergeant Pillow testified that his attention was focused on Moore, who was standing at the rear of the car, when Shoulders, an employee of the car wash who had been stooped down drying Moore's car, "popped up all of a sudden saying, 'I didn't do anything, I didn't do anything,' and then turned and began to run away."

{¶ 6} Detective Valentino likewise testified that Shoulders yelled loudly that he had not done anything wrong and then tried to run away. Detective Valentino caught Shoulders, handcuffed him, and then patted him down for officer safety. Upon patting him down, Detective Valentino found 22 small plastic baggies of marijuana inside a larger plastic bag,[1] two cell phones, and $227 cash in Shoulders's pockets. He also discovered a loaded pistol in a holster inside Shoulders's pants. The gun was subsequently determined to have been stolen.

{¶ 7} Sergeant Pillow testified that upon learning that Shoulders had a gun, he ordered the other men who had been standing by the car to their knees, handcuffed them, and searched them. The other men, including Moore, were released after the officers checked their identification for any outstanding warrants. Shoulders, however, was arrested and charged with drug trafficking, possession of criminal tools, and receiving stolen property.

---

[1] It was subsequently determined that the marijuana weighed 11.68 grams.

{¶ 8} Shoulders testified at the suppression hearing that he managed the car wash and was drying the windows of Moore's car when the police pulled up. Shoulders denied that he tried to run away and said that he just kept moving around the car, drying its windows, after the officers got out of their cars with their guns drawn. He said that one of the officers then grabbed him, threw him on top of the car, and patted him down, whereupon the officer found the marijuana, cash, and gun.

{¶ 9} Kenneth Holyfield, a patron at the car wash who witnessed the incident, also testified that Shoulders kept drying the car and did not run when the officers pulled up. According to Holyfield, the police then approached Shoulders and forcefully pushed him on the car. Elbert Harris, an employee of the car wash, likewise testified that Shoulders did not run from the police.

{¶ 10} The trial court denied Shoulders's motion to suppress, finding that his attempt to run from the police justified an investigatory stop and pat-down. At trial, the trial court granted Shoulders's renewed motion for acquittal in part and dismissed Counts 2 and 3, receiving stolen property and possession of criminal tools. The jury subsequently found Shoulders guilty of drug trafficking with a firearm specification and forfeiture specifications[2] and the trial court sentenced him to 18 months' incarceration.

II

---

[2]In granting Shoulders's Crim.R. 29 motion in part, the trial court dismissed Count 3, possession of criminal tools (i.e., the gun, money, and cell phones) for lack of evidence that the items were involved in drug trafficking or drug activity. The same items (the gun, money, and cell phones) were listed in the forfeiture specifications relating to the drug-trafficking charge in Count 1 and, therefore, the trial court should have also dismissed the forfeiture specifications regarding Count 1. Shoulders does not raise any argument about this inconsistency, however, and therefore we do not address it.

**{¶ 11}** In his first assignment of error, Shoulders contends that the trial court erred in denying his motion to suppress.

**{¶ 12}** Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. In deciding a motion to suppress, the trial court assumes the role of trier of fact. Id. A reviewing court is bound to accept those findings of fact if they are supported by competent, credible evidence. Id. But with respect to the trial court's conclusion of law, we apply a de novo standard of review and decide whether the facts satisfy the applicable legal standard. Id., citing *State v. McNamara* (1997), 124 Ohio App.3d 706, 707 N.E.2d 539.

**{¶ 13}** The Fourth Amendment to the United States Constitution prohibits warrantless searches and seizures, rendering them per se unreasonable unless an exception applies. *Katz v. United States* (1967), 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576. One exception is an investigative stop. *Terry v. Ohio* (1968), 392 U.S. 1, 20, 88 S.Ct. 1868, 20 L.Ed.2d 889. A police officer may make a brief, warrantless, investigatory stop of an individual where the officer reasonably suspects that the individual is or has been involved in criminal activity. Id. at 21. In reaching that conclusion, the officer must be able to point to specific and articulable facts that, taken together with rational inferences from those facts, reasonably warrant the intrusion. *State v. Andrews* (1991), 57 Ohio St.3d 86, 87, 565 N.E.2d 1271, citing *Terry*. Whether an investigatory stop is reasonable depends upon the totality of the circumstances surrounding the incident. *State v. Williams* (1990), 51 Ohio St.3d 58, 60, 554 N.E.2d 108. A court evaluating the validity of a *Terry* stop must consider the totality of the circumstances as "viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *Andrews* at 87-88.

{¶ 14} In this case, the police did not have a reasonable, articulable suspicion that Shoulders was engaged in criminal activity sufficient to justify an investigatory stop. Significantly, both Detective Valentino and Sergeant Pillow admitted that they did not observe any criminal activity or even any suspicious activity at the car wash, either by Shoulders or any of the other individuals, before they pulled in. Nevertheless, despite the lack of any reasonable suspicion or probable cause, they got out of their vehicles with their guns drawn[3] and ordered everyone in the vicinity to "freeze" so they could conduct what Detective Valentino described as "an interview stop." Without an articulated, reasonable suspicion of criminal activity, the investigatory stop was unlawful under *Terry*.

{¶ 15} The state argues that the officers properly stopped *Shoulders* because they had been investigating *Moore* regarding his alleged threat and knew that *Moore* often carried weapons. But the United States Supreme Court had made clear that "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." *Ybarra v. Illinois* (1979), 444 U.S. 85, 91, 100 S.Ct. 338, 62 L.Ed.2d 238. "[T]he belief of guilt must be particularized with respect to the person to be searched or seized." *Maryland v. Pringle* (2003), 540 U.S. 366, 371, 124 S.Ct. 795, 157 L.Ed.2d 769, citing *Ybarra*. Here, the police admitted there was no indication whatsoever that Shoulders was engaged in any criminal activity before they stopped him. Accordingly, the stop was unlawful.

{¶ 16} This court reached the same result in *State v. Brown* (1992), 83 Ohio App.3d 673, 615 N.E.2d 682. In that case, the defendant was walking down the street with an acquaintance

---

[3]Detective Valentino testified that both he and Sergeant Pillow got out of their car with their guns drawn; sergeant Pillow testified that his gun was not drawn when he first got out of the car. Nevertheless, it is apparent that at least one gun was pointed at Shoulders and the other individuals at the car wash.

who was drinking beer from an open container. The police stopped both men, arrested the defendant's acquaintance, and then, after patting down the defendant and discovering plastic baggies of marijuana, arrested him. This court held that the trial court had erred in denying the defendant's motion to suppress because there was no indication when he was stopped by the police that he was involved in criminal activity. This court held that the defendant's mere proximity to his acquaintance, who *was* involved in criminal activity, was insufficient, without more, to give rise to a reasonable suspicion sufficient to justify an investigatory stop.

{¶ 17} The state argues, however, that even if the initial stop were unlawful, Shoulders's subsequent attempt to flee from the police gave rise to a reasonable suspicion of criminal activity sufficient to justify his seizure. It relies on *Illinois v. Wardlow* (2000), 528 U.S. 119, 120 S.Ct. 673, in which United States Supreme Court stated: "Our cases have also recognized that nervous, evasive behavior is a pertinent factor in determining reasonable suspicion. Headlong flight — wherever it occurs — is the consummate act of evasion: [i]t is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." (Citations omitted.) Id. at 676.

{¶ 18} But this case is distinguishable from *Wardlow*. In *Wardlow*, the Supreme Court found that the defendant's "unprovoked flight" upon observing a four-car uniformed police convoy, *combined* with his presence in an area known for heavy drug trafficking, was sufficient to give rise to a reasonable suspicion to justify an investigative stop. Id. Here, however, the police relied only on Shoulders's flight to justify the stop; there were no other factors suggesting that he was engaged in criminal activity. There was no testimony that the car wash was in a high-crime area and no testimony that the car wash was known to the police as a place of criminal activity.

{¶ 19} Further, it is not apparent that Shoulders's flight was "unprovoked." Detective Valentino and Sergeant Pillow got out of their unmarked cars wearing plain clothes and ordered everyone to "freeze." There was no evidence that they identified themselves as police or that Shoulders was even aware they were the police. It is not unreasonable to conclude on these facts that Shoulders's flight was provoked by the gun that was pointed at him.

{¶ 20} In *Wardlow*, the United States Supreme Court specifically recognized that it was not adopting a per se rule that unprovoked flight always authorizes the temporary detention of anyone who flees at the mere sight of a police officer. Id. at 677. Further, it noted that it continued to adhere to the view that reasonable suspicion must be determined by " ' "the totality of the circumstances — the whole picture." ' " Id., quoting *United States v. Sokolow* (1989), 490 U.S. 1, 7-8, 109 S.Ct. 1581, 104 L.Ed.2d 1, quoting *United States v. Cortez* (1981), 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621. Here, in the absence of any evidence of criminal activity other than Shoulders's flight, we find that under the totality of the circumstances, the police did not have reasonable suspicion sufficient to justify an investigatory stop. See *State v. Smith*, Cuyahoga App. No. 87735, 2007-Ohio-281, ¶ 18 (defendant's flight, by itself, not enough to create reasonable suspicion sufficient to justify investigatory stop).

{¶ 21} Accordingly, we hold that the trial court erred in denying Shoulders's motion to suppress and remand for further proceedings consistent with this opinion. Appellant's first assignment of error is sustained. In light of our resolution of the first assignment of error, assignments of error two and three are moot and we need not address them. App.R. 12(A)(1)(c).

Judgment reversed
and cause remanded.

BOYLE, P.J., and SWEENEY, J., concur.