[Cite as *In re D.S.*, 2013-Ohio-5740.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 99600

# IN RE: D.S.
# A Minor Child

## JUDGMENT:
REVERSED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. DL 12120552

BEFORE:  Stewart, A.J., Boyle, J., and McCormack, J.

RELEASED AND JOURNALIZED:  December 26, 2013

**ATTORNEYS FOR APPELLANT**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY:    Stephanie N. Hall
Assistant County Prosecutor
The Justice Center
1200 Ontario Street, 8th Floor
Cleveland, OH    44113


**ATTORNEYS FOR APPELLEE**

Robert L. Tobik
Cuyahoga County Public Defender

BY:    Brant N. Dichiera
Assistant Public Defender
1849 Prospect Avenue, Suite 222
Cleveland, OH    44115

MELODY J. STEWART, A.J.:

{¶1} The state of Ohio appeals from a ruling that suppressed a gun seized from appellee D.S. Police officers investigating a shooting stopped and frisked two males, one of whom matched the description given by witnesses of someone connected to the shooting. This suspect was not armed, but the second male, D.S., was carrying a .22 caliber long rifle. The state charged D.S. with carrying a concealed weapon and discharging a firearm into a habitation. D.S. filed a motion to suppress evidence of the rifle, arguing that the police had no basis for stopping or frisking him. The trial court agreed, holding that D.S.'s proximity to the targeted suspect did not give rise to "probable cause" to search him and that the police had no indication that D.S. was engaging in any criminal activity as a predicate for the stop. The state appeals on grounds that the court applied an incorrect standard when ruling on the motion to suppress and that the police were justified in stopping and searching D.S. on grounds of officer safety. For the reasons that follow, we reverse the decision of the trial court.

{¶2} An appellate court's review of a trial court's ruling on a motion to suppress presents mixed questions of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.

> [T]he trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility. A reviewing court is bound to accept those findings of fact if supported by competent, credible evidence. However, without deference to the trial court's conclusion, it must be determined independently whether, as a matter of law, the facts meet the appropriate legal standard.

*State v. Hall*, 8th Dist. Cuyahoga No. 97722, 2012-Ohio-4155, _ 6, quoting *State v. Curry*, 95 Ohio App.3d 93,96,641 N.E.2d 1172 (8th Dist.1994). We review the trial court's application of the law de novo. *Burnside* at ¶ 8.

{¶3} The Fourth Amendment to the United States Constitution prohibits warrantless searches and seizures as, per se, unreasonable. *State v. Crawford*, 8th Dist. Cuyahoga No. 98605, 2013-Ohio-1659, _ 42, citing *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). An exception to the warrant requirement exists for brief investigatory stops where the officer reasonably suspects that the individual is or has been involved in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Reasonable suspicion exists where there is an objective and particularized suspicion that criminal activity was afoot and must be based on the totality of the surrounding circumstances. *State v. Sweeney*, 8th Dist. Cuyahoga No. 97414, 2012-Ohio-3152, ¶ 12, citing *State v. Andrews*, 57 Ohio St.3d 86, 87, 565 N.E.2d 1271 (1991).

{¶4} The touchstone of any Fourth Amendment analysis is "reasonableness." *Terry* understood the reasonable suspicion standard to be one that balanced "'the need to search [or seize] against the invasion which the search [or seizure] entails.'" *Id*. at 21, quoting *Camara v. Mun. Court*, 387 U.S. 523, 534, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967); *see also United States v. Hensley*, 469 U.S. 221, 228, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985) (courts determine the constitutionality of an investigatory stop by balancing "the nature and quality of the intrusion on personal security against the importance of the

governmental interests alleged to justify the intrusion.") When important governmental interests exist — most notably solving a crime — those interests can justify brief investigative stops based on less than probable cause as long as the intrusion is minimal. *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002); *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979) (noting investigatory stop of automobile "is limited [in purpose] and the resulting detention quite brief").

{¶5} Apart from the intrusion involved in the investigatory stop itself, the very reasonable governmental interest in protecting the safety of a police officer making an investigatory stop permits another intrusion into a person's Fourth Amendment rights — the weapons pat-down or frisk of the person stopped. *Terry* held that an officer may frisk a detained individual for weapons when the officer reasonably believes that the suspect may be armed and poses danger to the officer or others nearby. *Terry* at 27. The rationale for this exception is that "the [officer] making a reasonable investigatory stop should not be denied the opportunity to protect himself from attack by a hostile suspect." *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). In fact, the governmental interest in officer safety so outweighs an individual's rights that courts do not require the officer to state with certainty the need for protection: "The officer conducting the frisk need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent [person] in the circumstances would be warranted in the belief that [his or her] safety or that of others is in danger." *Terry* at 27.

{¶6} The facts presented at the suppression hearing showed that two Cleveland police officers received a radio broadcast about shots being fired near West 43d Street. They arrived on the scene to investigate just minutes later and witnesses told them that they saw a male tucking a gun in his waistband and running toward West 44th Street. The suspect was described as a black male wearing a gray jacket or hoodie, a black hat, and blue jeans.

{¶7} The officers immediately drove toward West 44th where they saw a male wearing clothing that matched the description given to them by the witnesses. The male was in the company of D.S. The officers called both males over to their vehicle. The males hesitated as if they were considering running, but eventually approached the vehicle. The officers demanded that the males show their hands, but they did not comply at first. It was only after a second demand that the males showed their hands. The officers, concerned for their personal safety, patted down both males but, prior to doing so, inquired whether either male was carrying any item that could poke or otherwise harm the officers. The frisk of D.S. revealed that he was carrying a .22 caliber rifle.

{¶8} The trial court held that based on the totality of the evidence presented, the mere propinquity of D.S. to the individual who matched the description given to the police officers did not give rise to probable cause to search D.S. The court found that the stop was invalid because there was no indication that D.S. was engaged in any criminal activity before he was stopped by police. And since the stop was not justified, the subsequent search of D.S. was also unlawful.

{¶9} We conclude, however, that it was reasonable for the officers to conduct a brief stop and frisk of the two males under the circumstances of this case. The suspect and D.S. were found walking together shortly after the shooting in the direction noted by the witnesses. In addition, one of the males wore clothing that matched that of the person described by the witnesses as running from the scene of the shooting and tucking a gun in his waistband. When approached by the police, both males appeared as though they might flee. This was suspicious behavior, and while their nervousness alone could not support a reasonable suspicion of criminal activity, it is "a pertinent factor in determining reasonable suspicion." *Illinois v. Wardlow*, 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). Given the totality of these circumstances, the police were justified in conducting an investigatory stop.

{¶10} The facts of this case are different from those in our decision in *State v. Stewart*, 193 Ohio App.3d 716, 2011-Ohio-2910, 953 N.E.2d 886 (8th Dist.). In *Stewart*, we found that the court erred by refusing to suppress evidence discovered in an investigatory stop because the police failed to offer an articulable suspicion that Stewart had been involved in criminal activity. Officers responding to the scene of the shooting received a fairly specific description of a black male suspect in a shooting: he was nearly six feet tall, in his late twenties or early thirties, he had braids under a hat, a number tattooed on his face, wore a black shirt and black pants, and was seen leaving the scene on foot in the company of a black female. That description was not broadcast to other police officers. Instead, officers were told to look for a black male and a black female on

foot.  By all accounts, Stewart did not match the description given to the police at the scene of the shooting:  he was only 20 years old, just 5'8" tall, did not have braids or a tattoo on his face, and testimony showed that he was wearing a white hoodie.  The officers who conducted the stop conceded that they simply stopped the first black male and female couple they encountered.  *Id.* at ¶ 14.  Unlike the present case, *Stewart* involved an admittedly indiscriminate stop that proved the officers lacked a reasonable suspicion that Stewart had been involved in criminal activity.  *Id.*

{¶11} Our decision in *State v. Shoulders*, 196 Ohio App.3d 178, 2011-Ohio-2659, 962 N.E.2d 847 (8th Dist.), is even less compelling as a basis for overturning the investigatory stop.  In *Shoulders*, police officers assembled in a car wash parking lot after seeing a person of interest there.  They ordered everyone present to remain still, but Shoulders, an employee of the car wash with no connection to the person of interest, yelled that he had done nothing and took off running.  The police apprehended him and discovered that he was carrying drugs, a gun, and cash.  Conceding that flight from the police is one factor that might give rise to a reasonable suspicion of criminal activity, we noted that Shoulders's flight was not, standing alone, enough to give the police a reasonable, articulable suspicion that he engaged in criminal activity sufficient to justify an investigatory stop.  *Id.* at ¶ 14.  Shoulders was not the object of the police investigation — he was simply present at the car wash as the police moved in to question their person of interest.  The only thing giving rise to a suspicion that he engaged in criminal activity was his flight.  The present case is thus factually distinguishable

because D.S. was more than a mere bystander with no connection to a person of interest. Rather, he was in the close company of a person who matched the description of a shooting suspect and was found in the direction noted by eyewitnesses, approximately one block away from, and a short time after, the shooting.

{¶12} This case does not involve an indiscriminate stop and frisk of random individuals or of someone in mere propinquity to another. D.S.'s companion matched the description given by witnesses at the scene of the shooting. Additionally, the investigatory stop was conducted proximate in time and location to the shooting. Based on this set of circumstances, the officers were justified in making an investigatory stop.

{¶13} D.S. asserts that even if the police had a reasonable suspicion that his companion was engaged in criminal activity under the totality of the circumstances as a predicate for an investigatory stop, they had no reason to suspect him of the same. He maintains that he was stopped for no other reason than his being in the company of another.

{¶14} The so-called "automatic companion" rule is a rule that allows the police to pat-down any companion of an arrestee to give assurance that they are unarmed. *See, e.g., State v. Barlow*, 8th Dist. Cuyahoga No. 53378, 1988 Ohio App. LEXIS 124 (Jan. 21, 1988); *see also United States v. Berryhill*, 445 F.2d 1189, 1193 (9th Cir. 1971) ("all companions of the arrestee within the immediate vicinity * * * are constitutionally subjected to the cursory 'pat-down' reasonably necessary to give assurance that they are unarmed").

**{¶15}** Although D.S.'s companion was a suspect and not someone who was being arrested, the application of the rule stands on solid constitutional ground. In the analogous context of a traffic stop, the United States Supreme Court has had no difficulty finding that the police could validly pat-down the occupants of a vehicle on the reasonable suspicion that the occupants of the vehicle were armed and dangerous. *Arizona v. Johnson*, 555 U.S. 323, 333, 129 S.Ct. 781, 172 L.Ed.2d 694. The Supreme Court views a traffic stop to "resemble, in duration and atmosphere, the kind of brief detention authorized in *Terry*," *Berkemer v. McCarty*, 468 U.S. 420, 439, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984), fn. 29, so the same principles apply here to investigative stops on the street. The police could validly detain D.S. when stopping him in the company of a suspect who was thought to be armed.

**{¶16}** Having justification to make an investigatory stop, the police articulated sufficient reasons to conduct a weapons pat-down on both males. The police were aware that their suspect fled the scene of a shooting while tucking a weapon in his waistband, so they could reasonably consider the suspect to be armed and dangerous. That fact alone entitled them to frisk the suspect for weapons. *See State v. Bobo*, 37 Ohio St.3d 177, 524 N.E.2d 489 (1988), paragraph two of the syllabus ("Where a police officer, during an investigative stop, has a reasonable suspicion that an individual is armed based on the totality of the circumstances, the officer may initiate a protective search for the safety of himself and others."). In addition, the police testified that when they approached the males, both individuals hesitated for a moment, causing the police to think that they were

about to flee. This was wary behavior and a factor in determining reasonable suspicion. *Wardlow*, 528 U.S. at 124. Finally, the males failed to comply with the police directive that they show their hands. The officers, having reason to believe that one of the males may have been armed, could have viewed the failure to show hands as an immediate threat to their safety. *See State v. Prude*, 8th Dist. Cuyahoga No. 71577, 1997 Ohio App. LEXIS 3681 (Aug. 14, 1997).

{¶17} The police offered articulable reasons to support both an investigative stop and a frisk for their safety and protection. By granting D.S.'s motion to suppress evidence, the court failed to give proper consideration to those reasons, particularly with respect to the officers' safety in stopping a suspect that they reasonably believed to be armed and dangerous. Although D.S. was not described as having been on the scene of the shooting, his being in the company of a potentially armed suspect more than justified his being stopped and frisked, particularly when he, like the suspect, appeared to be a flight risk and failed to comply with an order to show his hands to the police. This assignment of error is sustained.[1]

---

[1] The state also assigned as error that the court erroneously ruled that the arresting officers lacked "probable cause" to stop D.S. There is no dispute between the parties that the police were conducting an investigatory stop. That being the case, the applicable standard to be employed in deciding D.S.'s motion to suppress was the reasonable suspicion standard set forth in *Terry*. This error is of no consequence, however, because the court's analysis was, apart from using the words "probable cause," consistent with case law applying the correct standard of review to investigatory stops. So the court's use of the phrase "probable cause" was a harmless misnomer. *See, e.g., State v. Fountain*, 10th Dist. Franklin No. 94APC01-113, 1994 Ohio App. LEXIS 3815 (Aug. 30, 1994), ¶ 5 (affirming ruling on motion to suppress evidence when court appeared to have used and understood the proper legal analysis despite substituting the terminology "probable cause" for "reasonable suspicion").

**{¶18}** This cause is reversed to the trial court for further proceedings consistent with this opinion.

It is ordered that appellant recover of appellee its costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas — Juvenile Division to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

_____
MELODY J. STEWART, ADMINISTRATIVE JUDGE

TIM McCORMACK, J., CONCURS;
MARY J. BOYLE, J., CONCURS IN JUDGMENT ONLY