OPINION
{¶ 1} Defendant-appellant Tyrone Morgan appeals from his conviction and sentence for Having Weapons While Under a Disability, following a no-contest plea. Morgan contends that the trial court erred in overruling his motion to suppress, because the police officer did not have reasonable suspicion to conduct a stop pursuant to Terry v. Ohio (1968), 392 U.S. 1,88 S.Ct. 1868, 20 L.Ed.2d 889. Morgan contends that even if reasonable suspicion did exist to conduct a stop, the initial stop was not aTerry stop, but rather a custodial interrogation preceding which the police officer failed to read him his rights pursuant to Miranda v. Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694.
 {¶ 2} We conclude that the "public safety" exception to theMiranda rule, set forth in New York v. Quarles (1984),467 U.S. 649, 656, 104 S.Ct. 2626, 81 L.E.2d 550, applies in this case. Police officers observed Morgan, around midnight, riding a bicycle at a high speed away from an area from which they had heard three gunshots just moments before. Therefore, Miranda
warnings were not required before the officer asked "Where's the gun?," and Morgan replied that it was in his pocket.
 {¶ 3} We conclude that the trial court did not err in overruling Morgan's motion to suppress. Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 4} Around midnight on the night of August 11, 2004, Dayton Police Officer Jason Barnes and his partner, Officer Doug George, were in their cruiser with the windows rolled down at the intersection of Germantown and South Broadway in Dayton when they heard three gunshots, several seconds apart, coming from the direction of an apartment complex on Melba Street, approximately two to three blocks from their location. When the officers turned onto Broadway from Germantown to approach where they believed the gunshots were coming from, Officer Barnes observed a black male, later identified as Tyrone Morgan, riding a bicycle at a high speed away from the apartment complex. The officers turned a spotlight on Morgan, and Officer Barnes observed Morgan's right hand inside his coat pocket. The officers got out of their cruiser, drew their weapons, and ordered Morgan to stop and get off of his bicycle. Morgan complied. While Officer Barnes continued to point his weapon at Morgan, Officer George handcuffed Morgan, who was lying on the ground on his stomach. Officer George asked Morgan, "Where's the gun?" Morgan replied that it was inside his coat pocket. Officer George retrieved a gun from Morgan's inside coat pocket, in the same location where the officers had previously observed Morgan's right hand. When Morgan was arrested and placed in the cruiser, a group of people approached the cruiser from Melba Street. Morgan began yelling at the crowd and stated that he shot the gun up in the air because the group had tried to jump him earlier in the week. Morgan was not given Miranda warnings until he arrived at the jail.
 {¶ 5} Morgan was subsequently indicted on one count of Having Weapons While Under a Disability. Morgan filed a motion to suppress the statements he made and the evidence obtained during his detention. After a hearing, the trial court overruled Morgan's motion to suppress, finding that the officers conducted a Terry stop based on reasonable suspicion of criminal activity. The trial court found that the officers had reasonable suspicion to believe Morgan was involved in the gunshots being fired based on Morgan riding at a high speed from the direction of the gunshots, with his hand in his coat pocket, moments after the officers heard the gunshots. Although the trial court was troubled by the officers' drawing of their weapons to conduct aTerry stop, the trial court found that it was a reasonable measure for their safety given the situation.
 {¶ 6} Following the denial of his motion to suppress, Morgan entered a no-contest plea and was found guilty of Having Weapons While Under a Disability. The trial court sentenced Morgan to two years of imprisonment. From his conviction and sentence, Morgan appeals.
 II {¶ 7} Morgan's first and second assignments of error are as follows:
 {¶ 8} "AS A MATTER OF LAW, THE TRIAL COURT ERRED BY OVERRULING THE APPELLANT'S MOTION TO SUPPRESS BECAUSE THE OFFICER'S DID NOT HAVE REASONABLE SUSPICION TO INITIATE A TERRY
STOP OF THE APPELLANT.
 {¶ 9} "AS A MATTER OF LAW, THE TRIAL COURT ERRED IN OVERRULING THE APPELLANT'S MOTION TO SUPPRESS BECAUSE THE TRIAL COURT ERRONEOUSLY CONSIDERED THE STOP TO BE A TERRY STOP AT THE ONSET INSTEAD OF CUSTODIAL INTERROGATION."
 {¶ 10} Morgan contends that the trial court erred in overruling his motion to suppress, because the police officer did not have reasonable suspicion to conduct a stop pursuant toTerry v. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868,20 L.Ed.2d 889. Morgan contends that even if reasonable suspicion did exist to conduct a stop, the initial stop was not a Terry stop, but rather a custodial interrogation preceding which the police officer failed to read him his rights pursuant to Miranda v.Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.
 {¶ 11} A trial court undertakes the position of the trier of fact in a motion to suppress evidence. State v. Retherford
(1994), 93 Ohio App.3d 586, 592, 639 N.E.2d 498. Therefore, the trial court is in the best position to decide questions of fact and assess witness credibility. Id., citing State v. Clay
(1972), 34 Ohio St.2d 250, 63 O.O.2d 391, 298 N.E.2d 137. In reviewing a motion to suppress, this court will accept the factual findings of a trial court if the findings are supported by competent and credible evidence. Id. "Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." Id.
 {¶ 12} In Miranda, the Supreme Court of the United States held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Id. at 444.
 {¶ 13} We first note that there is no evidence that Morgan's statement that he shot the gun up in the air because the group had tried to jump him earlier in the week, uttered in response to the crowd of people that had approached the cruiser, was the product of interrogation. Therefore, Miranda warnings were not required in connection with this statement. However, there is no question that Officer George asked Morgan "Where's the gun?," which did constitute interrogation. Even so, we find that the "public safety" exception to the Miranda rule applies in this case.
 {¶ 14} Under the "public safety" exception, a suspect's answers to questions from a police officer are admissible in the absence of a Miranda warning so long as the questions asked of the suspect are "reasonably prompted by a concern for the public safety." New York v. Quarles (1984), 467 U.S. 649, 656,104 S.Ct. 2626, 81 L.E.2d 550. In Quarles, the Supreme Court of the United States held that "the need for answers to questions in a situation posing a threat to the public safety outweighs the need for the prophylactic rule protecting the Fifth Amendment's privilege against self-incrimination." Id. at 657. The Court declined "to place officers * * * in the untenable position of having to consider, often in a matter of seconds, whether it best serves society for them to ask the necessary questions without the Miranda warnings and render whatever probative evidence they uncover inadmissible, or for them to give the warnings in order to preserve the admissibility of evidence they might uncover but possibly damage or destroy their ability to obtain that evidence and neutralize the volatile situation confronting them." Id. at 657-658. The Court found that the value of the Miranda warning was outweighed by safety concerns in situations "where spontaneity rather than adherence to a police manual is necessarily the order of the day." Id. at 656.
 {¶ 15} We find that the Officer George's question, "Where's the gun?," was reasonably prompted by a concern for public as well as police safety. Officers Barnes and George observed Morgan, around midnight, riding a bicycle at a high speed away from an area from which they had heard three gunshots just moments before. When the officers turned a spotlight on Morgan, Officer Barnes observed Morgan's right hand inside his coat pocket. The officers could reasonably suspect that Morgan had just fired a weapon and still had access to that weapon. Because we conclude that the "public safety" exception to the Miranda
rule applies in this case, Miranda warnings were not required before Officer George asked "Where's the gun?," and Morgan replied that it was in his pocket.
 {¶ 16} Therefore, we conclude that the trial court did not err in overruling Morgan's motion to suppress. Accordingly, Morgan's first and second assignments of error are overruled.
 III {¶ 17} Both of Morgan's assignments of error having been overruled, the judgment of the trial court is Affirmed.
Brogan, P.J., and Grady, J., concur.