The STATE of Ohio, Appellee,

v.

STROZIER, Appellant.

[Cite as State v. Strozier, 172 Ohio App.3d 780, 2007-Ohio-4575.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 21746.

Decided Aug. 31, 2007.

782

Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and Michele D. Phipps, Assistant Prosecuting Attorney, for appellee.

Charles W. Slicer III, for appellant.

---

WOLFF, Presiding Judge.

{¶ 1} Terrell L. Strozier pleaded no contest to possession of heroin in an amount more than ten grams but less than 50 grams after the Montgomery County Court of Common Pleas overruled his motion to suppress evidence. The court found him guilty, and it sentenced him to two years of incarceration and a six-month driver's license suspension. Strozier appeals, raising one assignment of error.

{¶ 2} "The trial court erred when it failed to suppress certain incriminating statements made to officers prior to the Miranda warning."

{¶ 3} The testimony presented at the motion-to-suppress hearing reveals the following facts. At approximately 3:30 a.m. on August 3, 2005, Sergeant Eric Wilson of the Trotwood police department observed a maroon pickup truck driving erratically. The vehicle crossed the center line a couple of times and rolled through a stop sign. Wilson, who was driving behind the truck, ran the license plate number and learned that the vehicle had been reported stolen. Wilson called dispatch to verify that the truck had been entered as a stolen vehicle, and dispatch confirmed the report. Wilson followed the truck into the city of Dayton and requested assistance.

{¶ 4} The truck stopped in front of 833 Osmond Avenue, and a male passenger, Strozier, exited. Wilson turned on his overhead lights, exited his cruiser, and ordered Strozier to return to the truck. Wilson stated that he wanted all of the occupants of the vehicle in the truck for safety reasons. Specifically, he did not want to risk the passenger circling back and harming him from behind. Strozier returned to the vehicle. Wilson also ordered the driver to turn off the vehicle and toss the keys out of the window. The driver complied.

{¶ 5} At this time, two or three officers from the Dayton police department and a Trotwood officer, Roy McGill, arrived. With guns drawn, the officers ordered the driver, a female passenger, and Strozier to exit the truck and to lie prone on the ground. Wilson and McGill both testified that they did not have any facts to lead them to believe that Strozier, the passenger, had a weapon. Wilson stated, "[T]hat's why they were ordered to the ground because we did not know, and we were going to make sure." Wilson and McGill emphasized that they were conducting a "felony stop" and that the stop occurred in a high-crime area.

{¶ 6} Wilson focused on the driver. Wilson patted down the driver and placed him in his cruiser. Dayton police officers took custody of the female passenger because she had an outstanding warrant.

{¶ 7} McGill testified that he "secured" Strozier by handcuffing him while he was on the ground and then stood him up to conduct a pat-down search. McGill stated that prior to conducting the pat-down, he asked Strozier if he had "anything on [him] I need to know about? Anything that might stick me?" Strozier responded that he had a plastic bag with some brown stuff in it in his pocket. McGill retrieved the bag from Strozier's left pants pocket and, based on his experience, he believed that the bag contained heroin. McGill placed Strozier in his cruiser and informed him of his Miranda rights. Strozier indicated that he understood his rights and that he was willing to talk to McGill. Afterwards, Strozier told McGill that he had picked up the bag off the ground at Delphos Market and that he thought he could trade it for other drugs or money. Strozier indicated that he used marijuana and crack cocaine and that he couldn't use needles. When McGill told Strozier the brown substance was heroin, Strozier stated, "That's three grams of heroin then."

{¶ 8} On March 9, 2006, Strozier was indicated for possession of heroin, in violation of R.C. 2925.11(A). On April 26, 2006, Strozier moved to suppress the heroin and all of his statements, arguing that his detention and search were in violation of his constitutional rights. On June 19, 2006, the court conducted an evidentiary hearing on the motion, during which Wilson and McGill testified.

{¶ 9} On July 11, 2006, the trial court overruled the motion to suppress. The court first concluded that Wilson was justified in stopping the pickup truck and in detaining the passengers until he could determine whether any of them posed a risk to his safety. The court continued:

{¶ 10} "The question then becomes whether Defendant was under custodial interrogation prior to being mirandized. As set forth above, Defendant was handcuffed and asked by McGill prior to his pat-down, 'Do you have anything on you I need to know about? Anything that might stick me?' The Court acknowledges that being ordered out at gunpoint and handcuffed is a more drastic form of detention than used under most Terry stops. However, 'Terry does recognize that the police are entitled to take reasonable measures to ensure their own safety, including handcuffing should the situation warrant it.' [*State v. Jones* (Dec. 3, 1999), 1st Dist. No. C–990125, 1999 WL 1488937], at *11. In this case, both Wilson and McGill credibly testified that they were uneasy about the risk that was involved in this situation and needed to take precautions to ensure their safety.

{¶ 11} "Furthermore, under the 'public safety exception to the Miranda rule, a suspect's answers to questions from a police officer are admissible in the absence

of a Miranda warning so long as the questions asked of the suspect are reasonably prompted by a concern for the public safety.' *State v. Morgan* [2d Dist. No. 20987], 2005-Ohio-6542 [2005 WL 3358862]. McGill credibly testified that his question to Defendant was based on his concern that he may be stuck by a needle or other object while conducting the pat-down. Moreover, the question itself related to such a subject. Under these circumstances, the Court finds that McGill's question to Defendant falls under the public safety exception to the Miranda rule, and his statements are not suppressed."

{¶ 12} On appeal, Strozier claims that his incriminating statement regarding the drugs in his pocket was the product of police interrogation and, because he made the statement prior to being advised of his Miranda rights, he asserts that it should have been suppressed. Strozier contends that the trial court erred in applying the public-safety exception to the Miranda rule. Although Strozier focuses on his statement, we presume—as does the state—that he intends to argue that the heroin itself also should have been suppressed as fruit of the unlawfully obtained statement.

{¶ 13} In reviewing the trial court's ruling on a motion to suppress evidence, this court must accept the findings of fact made by the trial court if they are supported by competent, credible evidence. See *State v. Morgan* (Jan. 18, 2002), Montgomery App. No. 18985, 2002 WL 63196. However, "the reviewing court must independently determine, as a matter of law, whether the facts meet the appropriate legal standard." Id.

{¶ 14} As an initial matter, Strozier understandably has not challenged the trial court's conclusions that Wilson was justified in stopping the pickup truck and that he lawfully detained the passengers. The fact that the pickup truck had been reported stolen provided probable cause for Wilson to stop the vehicle. "When a lawfully stopped vehicle contains passengers, the Fourth Amendment permits law enforcement officers to detain those passengers for the duration of the lawful detention of the driver." *State v. Brown,* Montgomery App. No. 20336, 2004-Ohio-4058, 2004 WL 1730132, ¶ 14. In addition, the Supreme Court has held that due to concerns for officer safety and the minimal intrusion for the driver and passengers, the officers may order both the driver and the passengers to exit the vehicle. *Maryland v. Wilson* (1997), 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41.

{¶ 15} The Fifth Amendment to the United States Constitution provides that "[n]o person * * * shall be compelled in any criminal case to be a witness against himself." "The Fifth Amendment privilege against compulsory self-incrimination 'protects against any disclosures that the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that

might be so used.'" *Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt Cty.* (2004), 542 U.S. 177, 190, 124 S.Ct. 2451, 159 L.Ed.2d 292, quoting *Kastigar v. United States* (1972), 406 U.S. 441, 445, 92 S.Ct. 1653, 32 L.Ed.2d 212; *Ohio v. Reiner* (2001), 532 U.S. 17, 20, 121 S.Ct. 1252, 149 L.Ed.2d 158.

{¶ 16} The right to Miranda warnings is grounded in the Fifth Amendment's prohibition against compelled self-incrimination. *Moran v. Burbine* (1986), 475 U.S. 412, 420, 106 S.Ct. 1135, 89 L.Ed.2d 410. It is well established, however, that the police are not required to administer Miranda warnings to every individual they question. *State v. Biros* (1997), 78 Ohio St.3d 426, 440, 678 N.E.2d 891. Rather, only custodial interrogations trigger the need for Miranda warnings. Id., citing *Oregon v. Mathiason* (1977), 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714; *State v. Wenzler*, Greene App. No. 2003–CA–16, 2004-Ohio-1811, 2004 WL 758384, ¶ 15. "An individual is in custody when there has been a formal arrest or a restraint of freedom of movement such that a reasonable man would believe that he is under arrest." *Wenzler* at ¶ 15.

{¶ 17} "Not all seizures rise to the level of a formal arrest. Under *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, police officers may briefly stop and/or temporarily detain individuals in order to investigate possible criminal activity if the officers have a reasonable, articulable suspicion that criminal activity has occurred or is about to occur. *State v. Martin*, Montgomery App. No. 20270, 2004-Ohio-2738 [2004 WL 1178737], at ¶ 10, citing *Terry*, supra; *State v. Molette*, Montgomery App. No. 19694, 2003-Ohio-5965 [2003 WL 22533030], at ¶ 10. This investigatory detention, or 'Terry stop', is more intrusive than a consensual encounter, but less intrusive than a formal custodial arrest. An investigatory detention is limited in duration and purpose and can only last as long as it takes a police officer to confirm or to dispel his suspicions. *Terry*, supra. An individual is subject to an investigatory detention when, in view of all the circumstances surrounding the incident, by means of physical force or show of authority, a reasonable person would have believed that he was not free to leave or is compelled to respond to questions. *United States v. Mendenhall* (1980), 446 U.S. 544, 553, 100 S.Ct. 1870, 64 L.Ed.2d 497; *Terry*, 392 U.S. at 16, 19 [88 S.Ct. 1868, 20 L.Ed.2d 889]. The test for determining if a seizure is an arrest rather than a *Terry*-type detention is if a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest. *Yarborough v. Alvarado* (2004), 541 U.S. 652, 124 S.Ct. 2140, 158 L.Ed.2d 938; *State v. Castro* (Sept. 20, 1995), Montgomery App. No. 14398 [1995 WL 558782].

{¶ 18} "In a typical investigatory detention, such as a routine traffic stop, individuals are not 'in custody' for purposes of *Miranda* [*v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694]. *Berkemer v. McCarty* (1984), 468 U.S. 420, 440, 104 S.Ct. 3138, 82 L.Ed.2d 317; *State v. Martin,* Montgomery App. No. 19186, 2002-Ohio-2621 [2002 WL 1042066]; *State v. Healy* (Aug. 4, 2000), Montgomery App. No. 18232 [2000 WL 1062197]. However, if the individual is, during the course of the detention, 'subjected to treatment that renders him "in custody" for practical purposes, he will be entitled to the full panoply of protections prescribed by *Miranda*.' *Berkemer,* 468 U.S. at 440 [104 S.Ct. 3138, 82 L.Ed.2d 317]; *State v. Salyer* (Apr. 10, 1998), Miami App. No. 97–CA–39 [1998 WL 184651]." *State v. Keggan,* Greene App. No. 2006–CA–9, 2006-Ohio-6663, 2006 WL 3692415, ¶ 30–31.

{¶ 19} Although the trial court apparently found that Strozier was subjected to an atypically "drastic form of detention" under *Terry,* the parties apparently agree that Strozier was in custody when McGill asked him questions prior to conducting the pat-down. We likewise agree that Strozier was in custody. Strozier was ordered out of the vehicle by at least five officers at gunpoint, told to lie on the ground, and handcuffed. Although the trial court correctly noted that placing a suspect in handcuffs does not necessarily result in the suspect being in custody, see *Keggan* at ¶ 41, the officers' conduct in this case is consistent with a formal arrest. See *New York v. Quarles* (1984), 467 U.S. 649, 655, 104 S.Ct. 2626, 81 L.Ed.2d 550. Accordingly, Strozier was in custody for purposes of receiving Miranda warnings prior to questioning.

{¶ 20} The state asserts that McGill's questions to Strozier—"Do you have anything I need to know about? Anything that might stick me?"—did not constitute "interrogation" for purposes of *Miranda.* "Interrogation" includes express questioning as well as "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis* (1980), 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297. " 'Interrogation,' as conceptualized in the *Miranda* opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself." *Innis,* 446 U.S. at 300, 100 S.Ct. 1682, 64 L.Ed.2d 297. "Police officers are not responsible for unforeseeable incriminating responses." *State v. Waggoner,* Montgomery App. No. 21245, 2006-Ohio-844, 2006 WL 441622, ¶ 14.

{¶ 21} The state asserts that McGill could not have known that his question would lead Strozier to respond that he had a plastic bag with some brown stuff in his pocket. The state argues that McGill did not ask about weapons, drugs, or contraband, and that he asked the question because he had previously been stuck by a needle while conducting a pat-down. The state contends that McGill could

not have known that Strozier would admit to having an object other than one that could have stuck McGill. In contrast, Strozier argues that it was the first question—"Do you have anything on you I need to know about?"—that elicited his admission. Consequently, Strozier asserts that he was interrogated in violation of *Miranda*.

{¶ 22} In our view, McGill's initial open-ended question was reasonably likely to elicit an incriminating response from Strozier. Although McGill apparently intended to qualify his initial broad question by limiting it to anything that might stick him during the pat down, the officer should have known that his question would be reasonably interpreted as asking Strozier if he had anything illegal on his person, particularly weapons or drug paraphernalia. Strozier apparently responded to the initial question as to whether he had anything McGill should know about. Accordingly, McGill's questions constituted an interrogation under *Miranda*.

{¶ 23} "Under the 'public safety' exception, a suspect's answers to questions from a police officer are admissible in the absence of a *Miranda* warning so long as the questions asked of the suspect are 'reasonably prompted by a concern for the public safety.' *New York v. Quarles* (1984), 467 U.S. 649, 656, 104 S.Ct. 2626, 81 L.Ed.2d 550." *State v. Morgan,* Montgomery App. No. 20987, 2005-Ohio-6542, 2005 WL 3358862, ¶ 14. In other words, "[t]he public safety exception allows the police, under certain circumstances, to temporarily forgo advising a suspect of his *Miranda* rights in order to ask questions necessary to securing their own immediate safety or the public's safety." *State v. Santiago* (Mar. 13, 2002), Lorain App. No. 01CA007798, 2002 WL 388901.

{¶ 24} In *Quarles,* "[t]he police * * * were confronted with the immediate necessity of ascertaining the whereabouts of a gun which they had every reason to believe the suspect had just removed from his empty holster and discarded in the supermarket. So long as the gun was concealed somewhere in the supermarket, with its actual whereabouts unknown, it obviously posed more than one danger to the public safety: an accomplice might make use of it, a customer or employee might later come upon it." *Quarles,* 467 U.S. at 657, 104 S.Ct. 2626, 81 L.Ed.2d 550. Recognizing a "narrow exception" to the *Miranda* rule, the court held that "the need for answers to questions in a situation posing a threat to the public safety outweighs the need for the prophylactic rule protecting the Fifth Amendment's privilege against self-incrimination." Id. at 657, 104 S.Ct. 2626, 81 L.Ed.2d 550. The court declined "to place officers * * * in the untenable position of having to consider, often in a matter of seconds, whether it best serves society for them to ask the necessary questions without the *Miranda* warnings and render whatever probative evidence they uncover inadmissible, or for them to give the warnings in order to preserve the admissibility of evidence they might

uncover but possibly damage or destroy their ability to obtain that evidence and neutralize the volatile situation confronting them." Id. at 657–658, 104 S.Ct. 2626, 81 L.Ed.2d 550. The court indicated that this limited exception will not be difficult for police officers to apply "because in each case it will be circumscribed by the exigency which justifies it." Id. at 658, 104 S.Ct. 2626, 81 L.Ed.2d 550.

{¶ 25} The public-safety exception does not apply to all situations in which a suspect is believed to have used a weapon in the commission of a crime, and it does not permit officers to ask questions that are not necessary to secure their safety or that of the public. *State v. Jergens* (Sept. 3, 1993), Montgomery App. No. 13294, 1993 WL 333649; *Quarles*, 467 U.S. at 658–59, 104 S.Ct. 2626, 81 L.Ed.2d 550. "In order to establish that the exception is warranted in any given case, the State must show that: (1) there was an *objectively* reasonable need to protect the police or the public, (2) from an *immediate* danger, (3) associated with a weapon, and that (4) the questions asked were related to that danger and reasonably necessary to secure public safety. Clearly, this analysis involves an examination of the circumstances of each case." *Jergens*, Montgomery App. No. 13294, 1993 WL 333649; see, also, *State v. Prim* (1999), 134 Ohio App.3d 142, 154, 730 N.E.2d 455.

{¶ 26} As argued by Strozier, the facts of this case are distinguishable from *Quarles*. Wilson and McGill both testified that they had no facts to lead them to believe that Strozier was armed, other than the fact that they were conducting a "felony stop" and were in a high crime area. There is no evidence that the offense for which they were stopped involved a weapon or that Strozier or his companions had discarded a weapon nearby. In short, the record is devoid of any evidence that there was an objectively reasonable need to protect the public from an immediate danger from a weapon.

{¶ 27} Although the present circumstances do not involve an immediate threat to the public, we agree with McGill that the avoidance of being stuck by a needle during a lawful pat-down is a legitimate safety concern for police officers.[1] McGill testified at the suppression hearing that he asked Strozier whether he had anything that might stick him "[t]o make sure * * * as I'm searching for weapons that I didn't get stuck with a needle like I've found before on a subject in his shirt sleeve."

---

1. The trial court did not address whether the police had a reasonable suspicion that Strozier was armed and dangerous, thus justifying a protective search for weapons. Although Strozier has not raised this issue on appeal, the record indicates that the frisk for weapons was based solely on the facts that the police were conducting a "felony stop" and the vehicle stopped in a high crime neighborhood. Wilson and McGill both denied having additional facts to support a belief that Strozier was armed. Under these circumstances, the record fails to demonstrate a particularized basis for believing that Strozier was armed, as is required for a pat-down search. See *State v. Boyce*, Clark App. No. 06–CA–64, 2007-Ohio-2131, 2007 WL 1299703.

{¶ 28} In order to invoke the public-safety exception to Miranda under these circumstances, the officer's question must be narrowly tailored to address *only* that concern. Officers may not ask investigatory questions absent Miranda warnings. In the present circumstances, McGill's initial question went beyond the specific concern regarding being stuck by a needle. The result of the initial expansive question was that Strozier responded with an admission to possessing a "plastic bag with some brown stuff in it." Under these circumstances, the officer's question exceeded the public-safety exception. Strozier's response—and the heroin that was seized as a result of his response—should have been suppressed. See *State v. Farris,* 109 Ohio St.3d 519, 2006-Ohio-3255, 849 N.E.2d 985, ¶ 49 (under the Ohio Constitution, physical evidence gathered as a result of statements made in custody without the benefit of a Miranda warning should be excluded).

{¶ 29} The assignment of error is sustained.

{¶ 30} The judgment of the trial court will be reversed and the case will be remanded for further proceedings.

Judgment reversed
and cause remanded.

FAIN and GRADY, JJ., concur.