**[Cite as *State v. Brown*, 2014-Ohio-3257.]**

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                                       :

    Plaintiff-Appellee                       :            C.A. CASE NO.    26035

v.                                                 :            T.C. NO.    13CR2488

DECENTA D. BROWN                          :            (Criminal appeal from
                                              Common Pleas Court)

    Defendant-Appellant                      :

                                                   :

. . . . . . . . . .

# O P I N I O N

Rendered on the ____25th____ day of _____July_____, 2014.

. . . . . . . . . .

TIFFANY ALLEN, Atty. Reg. No. 0089369, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

VICTOR A. HODGE, Atty. Reg. No. 0007298, Assistant Public Defender, 117 S. Main Street, Suite 400, Dayton, Ohio 45422
        Attorney for Defendant-Appellant

. . . . . . . . . .

DONOVAN, J.

{¶ 1}    Defendant-appellant Decenta D. Brown appeals his conviction and sentence

for one count of tampering with evidence, in violation of R.C. 2921.12(A)(1), a felony of the third degree. Brown filed a timely notice of appeal with this Court on December 23, 2013.

{¶ 2}   The incident which forms the basis for the instant appeal occurred on August 13, 2013, at approximately 8:00 a.m. when Montgomery County Sheriff's Deputy John W. Eversole was dispatched to Jefferson Township to investigate a shooting that occurred the night before at the Olive Hills Apartment Complex (Olive Hills). Upon arriving at Olive Hills, Dep. Eversole observed several motor vehicles which had been struck by gunfire. Eventually, Dep. Eversole's investigation led him to a residence located at 131 Pawtucket Street which had been struck by gunfire on the previous night. Once there, Dep. Eversole spoke to Olive Hills' apartment manager, Nicole Sudah. Sudah provided Dep. Eversole with information regarding one of the primary individuals involved in the shooting. Sudah informed Dep. Eversole that the suspect had recently been seen standing in front of a residence located at 7471 Bronson Street. Sudah described the individual as a black male wearing a baseball cap emblazoned with a "Superman" logo.

{¶ 3}   Acting on the information provided by Sudah, Dep. Eversole went to the 7471 Bronson Street where he observed an individual who matched the description provided to him. Dep. Eversole and his partner, Dep. Prater, exited their cruiser and approached the suspect, later identified as the appellant, Brown. Upon observing the deputies approaching, Brown ran away in a southerly direction. Dep. Eversole chased Brown through the Olive Hills complex. Shortly thereafter, Brown attempted to escape through a hole in a broken section of a privacy fence. Dep. Eversole testified that Brown could not get through the fence. At that point, Dep. Eversole observed Brown make "an underhand type motion"

with his right arm towards the hole in the fence. Brown then stood up and began running southbound along the fence again in an effort to elude Dep. Eversole. Dep. Eversole ordered Brown to stop and lay on the ground. Brown complied, was handcuffed and arrested, and placed in the back of Dep. Eversole's cruiser.

{¶ 4} After securing Brown, Dep. Eversole returned to the hole in the fence where he observed the appellant swinging his right arm. Upon investigation, Dep. Eversole located a black cellular smartphone, two baggies containing gel capsules later found to contain heroin, and a magazine from a .40 Glock handgun containing fourteen live rounds of ammunition. Dep. Eversole testified that based on his training and experience, a magazine is almost always accompanied by a gun. Dep. Eversole believed there was a strong probability that Brown had discarded a handgun sometime during the foot chase. More importantly, Dep. Eversole was concerned that there was an additional round chambered in the handgun thrown away by Brown during the chase. Dep. Eversole called for backup to search the area for the handgun. Several officers and canine units subsequently arrived and searched the surrounding area where the loaded magazine was found.

{¶ 5} One of the officers to arrive to aid in the search for a handgun was Montgomery County Sheriff's Deputy Victoria Dingee. Dep. Eversole informed Dep. Dingee the he was looking for a handgun that may have been thrown away and asked if she could speak to Brown regarding its location. Dep. Dingee walked over to the cruiser where Brown was being held and rolled the window down to speak with Brown. It is undisputed that Dep. Dingee did not advise Brown of his *Miranda* rights before the following exchange occurred:

The State: Okay. Tell us about the conversation that you had with Mr. Brown.

Dep. Dingee: It was a pretty short conversation. I said to Mr. Brown, I said, "Where is the gun?" I said, "There are a lot of kids and people walking around. It's dangerous." And I said, "The problems that you have right now are going to be very small if compared to what it's going to be like if a child picks up that gun and shoots himself or someone else in this apartment complex."

Q: Okay. Did you say anything else to him?

A: No. I said – I think I said that twice and [Brown] said, "I don't have the gun." He said, "I haven't seen the gun since last night." And he said, "I just had the magazine."

Q: Okay. And are you –

A: I said, "That doesn't make sense." I said, "You understand that doesn't make sense." And he said, "I know. People probably lie to you all the time, but I don't have the gun."

{¶ 6}    The exchange between Dep. Dingee and Brown was captured by the video recording system in the police cruiser and admitted at the suppression hearing as State's Exhibit 1. We note that no handgun was recovered during the search of the area where Brown was arrested.

{¶ 7}    On September 11, 2013, Brown was indicted for one count of tampering with evidence and one count of possession of heroin. Brown filed a motion to suppress the statements he made to Dep. Dingee on September 18, 2013. A hearing was held on said motion on October 21, 2013. The trial court overruled Brown's motion to suppress on

November 12, 2013, announcing its findings of fact and conclusions of law from the bench. On the same day, Brown entered a plea of no contest to one count of tampering with evidence, and the State dismissed the remaining count in the indictment for possession of heroin. The trial court found Brown guilty of tampering with evidence and sentenced him to up to five years of community control.

{¶ 8} It is from this judgment that Brown now appeals.

{¶ 9} Brown's sole assignment of error is as follows:

{¶ 10} "THE TRIAL COURT ERRED BY OVERRULING APPELLANT'S MOTION TO SUPPRESS STATEMENTS TAKEN PURSUANT TO CUSTODIAL INTERROGATION WITHOUT PRIOR *MIRANDA* WARNINGS."

{¶ 11} In his sole assignment, Brown contends that the trial court erred when it overruled his motion to suppress the statements he made to Dep. Dingee after he was arrested. Specifically, Brown points out that he was not apprised of his *Miranda* rights before being interrogated by Dep. Dingee, and this situation does not fall under the "public safety exception" to the *Miranda* rule.

{¶ 12} As this Court has previously noted:

"Appellate courts give great deference to the factual findings of the trier of facts. (Internal citations omitted) . At a suppression hearing, the trial court serves as the trier of fact, and must judge the credibility of witnesses and the weight of the evidence. (Internal citations omitted). The trial court is in the best position to resolve questions of fact and evaluate witness credibility. (Internal citations omitted). In reviewing a trial court's decision

on a motion to suppress, an appellate court accepts the trial court's factual findings, relies on the trial court's ability to assess the credibility of witnesses, and independently determines whether the trial court applied the proper legal standard to the facts as found. (Internal citations omitted). An appellate court is bound to accept the trial court's factual findings as long as they are supported by competent, credible evidence." *State v. Hurt*, Montgomery App. No. 21009, 2006-Ohio-990.

*State v. Purser*, 2d Dist. Greene No. 2006 CA 14, 2007-Ohio-192, ¶ 11.

{¶ 13} Initially, we note that the only two witnesses who testified at the hearing held on Brown's motion to suppress were Dep. Eversole and Dep. Dingee. The trial court found their testimony to be credible and adopted it as the court's factual findings. We also note that it is undisputed that Brown was under arrest at the time Dep. Dingee questioned him regarding the location of the handgun.

{¶ 14} The Fifth Amendment to the United States Constitution provides that "[n]o person *** shall be compelled in any criminal case to be a witness against himself." "The Fifth Amendment privilege against compulsory self-incrimination 'protects against any disclosures that the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used.'" *Hiibel v. Sixth Judicial Dist. Ct. of Nev., Humbolt Cty.*, 542 U.S. 177, 190, 124 S.Ct. 2451, 159 L.Ed.2d 292 (2004), quoting *Kastigar v. United States*, 406 U.S. 441, 445, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972); *Ohio v. Reiner*, 532 U.S. 17, 20, 121 S.Ct. 1252, 149 L.E.2d 158 (2001).

{¶ 15} The right to *Miranda* warnings are grounded in the Fifth Amendment's

prohibition against compelled self-incrimination. *Moran v. Burbine*, 475 U.S. 412, 420, 106 S.Ct. 1135, 89 L.E2d 410 (1986). It is well-established, however, that the police are not required to administer *Miranda* warnings to every individual they question. *State v. Biros*, 78 Ohio St.3d 426, 440, 678 N.E.2d 891 (1997). Rather, only custodial interrogations trigger the need for *Miranda* warnings. *Id*., citing *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977); *State v. Wenzler*, 2d Dist. Greene No. 2003-CA-16, 2004-Ohio-1811, ¶15. "An individual is in custody when there has been a formal arrest or a restraint of freedom of movement such that a reasonable man would believe that he is under arrest." *Wenzler* at ¶15.

{¶ 16} "Under the 'public safety' exception, a suspect's answers to questions from a police officer are admissible in the absence of a *Miranda* warning so long as the questions asked of the suspect are 'reasonably prompted by a concern for the public safety.' *New York v. Quarles* (1984), 467 U.S. 649, 656, 104 S.Ct. 2626, 81 L.E.2d 550." *State v. Morgan*, 2d Dist. Montgomery No. 20987, 2005-Ohio-6542, ¶14. In other words, "[t]he public safety exception allows the police, under certain circumstances, to temporarily forgo advising a suspect of his *Miranda* rights in order to ask questions necessary to securing their own immediate safety or the public's safety." *State v.* Strozier, 172 Ohio App.3d 780, 2007-Ohio-4575, 876 N.E.2d 1304, ¶ 23 (2d Dist.), citing *State v. Santiago*, 9th Dist. Lorain No. 01CA7798, 2002-Ohio-1114.

{¶ 17} In *Quarles*, "[t]he police *** were confronted with the immediate necessity of ascertaining the whereabouts of a gun which they had every reason to believe the suspect had just removed from his empty holster and discarded in the supermarket. So long as the

gun was concealed somewhere in the supermarket, with its actual whereabouts unknown, it obviously posed more than one danger to the public safety: an accomplice might make use of it, a customer or employee might later come upon it." *Quarles*, 467 U.S. at 657. Recognizing a "narrow exception" to the *Miranda* rule, the Court held that "the need for answers to questions in a situation posing a threat to the public safety outweighs the need for the prophylactic rule protecting the Fifth Amendment's privilege against self-incrimination." *Id*. at 657. The Court declined "to place officers *** in the untenable position of having to consider, often in a matter of seconds, whether it best serves society for them to ask the necessary questions without the *Miranda* warnings and render whatever probative evidence they uncover inadmissible, or for them to give the warnings in order to preserve the admissibility of evidence they might uncover but possibly damage or destroy their ability to obtain that evidence and neutralize the volatile situation confronting them." *Id*. at 657-658. The Court indicated that this limited exception will not be difficult for police officers to apply "because in each case it will be circumscribed by the exigency which justifies it." *Id*. at 658.

{¶ 18} The public safety exception does not apply to all situations in which a suspect is believed to have used a weapon in the commission of a crime, and it does not permit officers to ask questions which are not necessary to secure their safety or that of the public. *Strozier*, at ¶ 25; *Quarles*, 467 U.S. at 658-59. "In order to establish that the exception is warranted in any given case, the State must show that: (1) there was an *objectively* reasonable need to protect the police or the public, (2) from an *immediate* danger, (3) associated with a weapon, and that (4) the questions asked were related to that danger

and reasonably necessary to secure public safety. Clearly, this analysis involves an examination of the circumstances of each case." *State v. Jergens*, 2d Dist. Montgomery No. 13294, 1993 WL 333649 (September 3, 1993); see, also, *State v. Prim*, 134 Ohio App.3d 142, 154, 730 N.E.2d 455 (8th Dist.1999).

**{¶ 19}** Upon review, we conclude that the facts of the instant case fall squarely under the public safety exception to the *Miranda* rule. First, Dep. Eversole testified that he was dispatched to Olive Hills to investigate a shooting that occurred during the previous night. When he arrived at the apartment complex, Dep. Eversole observed several vehicles which had sustained gunfire. Moreover, when he arrived at 131 Pawtucket Street, Dep. Eversole observed that the residence had also been struck by gunfire. The complex manager informed Dep. Eversole that a suspect in the shooting, a black male wearing a Superman baseball cap, was standing in front of a nearby residence located at 7471 Bronson Street.

**{¶ 20}** Dep. Eversole immediately went to that location and observed an individual matching the description provided by the complex manager. Upon observing the deputies approaching, Brown fled the scene. The deputies pursued Brown on foot. In light of the shooting that occurred the previous night and the fact that Brown fled, Dep. Eversole possessed a reasonably objective belief that Brown was armed with a gun. This belief was reinforced when Dep. Eversole observed Brown discard, among other things, a magazine from a .40 caliber Glock handgun. Dep. Eversole counted fourteen live rounds of ammunition in the magazine, leading to a concern that the handgun may have been discarded during the foot pursuit with a live round still chambered in the gun. Dep. Eversole testified

that he also observed approximately twenty to thirty people in the nearby vicinity, including children, who could have picked up the handgun and harmed themselves or others. The presence of the handgun presented an immediate danger to the deputies and the people who resided at the apartment complex which was comprised of approximately 250 units.

{¶ 21} After initial unsuccessful attempts to locate the handgun, Dep. Eversole directed Dep. Dingee to speak to Brown regarding the location of the handgun which potentially posed a direct threat to residents of the apartment complex, as well as the deputies who were searching the area. Dep. Dingee's custodial interrogation was proper under the public safety exception as it was limited in scope and length. Dep. Dingee specifically asked Brown to tell her the location of the handgun. Dep. Dingee also properly informed him that the handgun, if still loaded, posed a grave threat to people in the area. Clearly, the questions asked by Dep. Dingee were directly related to that danger and reasonably necessary to secure public safety. Similar to the circumstances in *Quarles*, Dep. Dingee's primary purpose in questioning Brown was to locate the handgun before anyone was injured, not to gather incriminating evidence against him. The four-part test enunciated in *Jergens* has been met. Accordingly, the trial court did not err when it overruled Brown's motion to suppress because his statements regarding the location of the handgun were clearly admissible under the public safety exception to the *Miranda* rule.

{¶ 22} Brown's sole assignment of error is overruled.

{¶ 23} Brown's sole assignment of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . .

FROELICH, P.J. and HALL, J., concur.

Copies mailed to:

Tiffany Allen
Victor A. Hodge
Hon. Mary Katherine Huffman