[Cite as *State v. Black*, 2018-Ohio-3066.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**GREENE COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2017-CA-29 |
| | : | |
| v. | : | Trial Court Case No. 16-CR-466 |
| | : | |
| CALVIN J. BLACK | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 3rd day of August, 2018.

. . . . . . . . . .

NATHANIEL R. LUKEN, Atty. Reg. No. 0087864, 61 Greene Street, Xenia, Ohio 45385
    Attorney for Plaintiff-Appellee

BROCK A. SCHOENLEIN, Atty. Reg. No. 0084707, 371 West First Street, Dayton, Ohio
45402
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, J.

{¶ 1} Calvin Black appeals from his convictions for having weapons while under disability and for improper handling of a firearm in a motor vehicle. Black pleaded no contest to both charges after the trial court overruled his motion to suppress statements that he made to police about a handgun in the truck that he had been driving. He argues that the court should have suppressed his statements because they were made during custodial interrogation before police had given him *Miranda* warnings. He also argues that the gun should have been suppressed as fruit of the poisonous tree. We find no error, so we affirm.

## I. Background

{¶ 2} Black was indicted on one count of having weapons while under disability under R.C. 2923.13(A)(1), one count of having weapons while under disability under R.C. 2923.13(A)(3), and one count of improper handling of a firearm in a motor vehicle under R.C. 2923.16(B). Black moved to suppress the statement that he made to police officers that there was a handgun in the vehicle he had been driving and he moved to suppress the handgun.

{¶ 3} The state's sole witness at the suppression hearing was Beavercreek Police Officer Kris Brownlee. Brownlee testified that he initiated a traffic stop of the truck that Black was driving because the vehicle did not have a front license plate. The registered owner of the truck, Latashia Lee, was a passenger. Brownlee approached the truck and obtained an Indiana driver's license from Black. Officer Brownlee returned to his cruiser and ran Black's information through the Law Enforcement Automated Data System (LEADS) using his onboard computer. According to Brownlee, the LEADS report showed

that Black had a suspended Ohio driver's license, a nationwide warrant out of Oklahoma for dangerous drugs, and an Ohio carrying concealed weapon (CCW) permit. Concerned, Officer Brownlee called for backup.

{¶ 4} When backup arrived, Officer Brownlee performed a felony stop. Brownlee testified that during a felony stop, an officer is more vigilant regarding officer safety, because whatever the suspect was accused of doing in another jurisdiction was serious enough to warrant a nationwide warrant. Drawing his weapon, he told Black and Lee to exit the truck. He told Black about the warrant and told him to kneel and put his hands up. Black cooperated, and Brownlee handcuffed him. Brownlee told the other officer that Black had a CCW permit and a felony arrest warrant. Brownlee then asked Black if there was "[a]nything in the car I should know about," "[a]nything dangerous?" Black told him that there was a "[f]irearm" in the truck. Brownlee asked where it was, and Black replied that it was in the back of the truck. Brownlee told Black that he was not under arrest, but that he would be detained until Brownlee could verify the warrant. Black was then placed in the back of Brownlee's cruiser. Brownlee testified that he decided to search the vehicle to secure the weapon for safety reasons. Before searching the truck, Brownlee asked Lee, the registered owner, if he could search it. She gave him permission. Behind the driver's seat, Brownlee found a loaded handgun. Brownlee secured the gun and went to speak with Black. At that juncture, Officer Brownlee informed Black of his *Miranda* rights, and Black said that he did not want to talk with Brownlee about the gun. The arrest warrant was verified, and Black was arrested.

{¶ 5} The trial court overruled Black's motion to suppress, concluding that the public-safety exception to *Miranda* applied. Black pleaded no contest to one count of

having weapons while under disability (under R.C. 2923.13(A)(1)) and to improper handling of a firearm in a motor vehicle. The trial court found him guilty on both counts. The other count of having weapons while under disability was dismissed. The trial court sentenced Black to five years of community control plus three months in jail.

{¶ 6} Black appealed.

## II. Analysis

{¶ 7} The sole assignment of error alleges that the trial court erred by overruling the motion to suppress. Black contends that the *Miranda* public-safety exception does not apply.

{¶ 8} "Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. An appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. But the appellate court must decide the legal questions independently, without deference to the trial court's decision." (Citations omitted.) *State v. Banks-Harvey*, 152 Ohio St.3d 368, 2018-Ohio-201, 96 N.E.3d 262, ¶ 14. Black challenges the admission of his statements to Officer Brownlee about the handgun in the truck, made before Black was given *Miranda* warnings, and the admission of the handgun, as illegal fruit of the *Miranda* violation.

{¶ 9} *Miranda* "extended the Fifth Amendment privilege against compulsory self-incrimination to individuals subjected to custodial interrogation by the police." *New York v. Quarles*, 467 U.S. 649, 654, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984). "[T]he requirement that police officers administer *Miranda* warnings applies only when a suspect is subjected to both custody and interrogation." *State v. Neyland*, 139 Ohio St.3d 353, 2014-Ohio-1914, 12 N.E.3d 1112, ¶ 119, citing *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602,

16 L.Ed.2d 694 (1966) (prohibiting "custodial interrogation" without warnings). Here, the parties appear to agree that Officer Brownlee's questions constituted custodial interrogation and that, before asking the questions, Brownlee had not given Black any *Miranda* warnings.

{¶ 10} We question whether it can rightly be said that Black told Officer Brownlee about the gun in response to Brownlee's questions as opposed to compliance with a statutory duty. An Ohio CCW permit holder is required to "promptly inform" a police officer performing a traffic stop about any loaded handguns in the vehicle:

> If a licensee is the driver or an occupant of a motor vehicle that is stopped as the result of a traffic stop or a stop for another law enforcement purpose and if the licensee is transporting or has a loaded handgun in the motor vehicle at that time, the licensee shall promptly inform any law enforcement officer who approaches the vehicle while stopped that the licensee has been issued a concealed handgun license and that the licensee currently possesses or has a loaded handgun * * *.

R.C. 2923.126(A). Consequently, Black may have been complying with his obligation to inform Officer Brownlee about the gun. Nevertheless the trial court did not make a factual determination about the impetus for Black's disclosure, so we will assume for the sake of analysis that Black's disclosures were in reply to Brownlee's questions.

{¶ 11} We conclude on the facts before us there was no *Miranda* violation because, as the trial court also determined, the public-safety exception applied. While there is little dispute here that Black was in custody, "[t]he Fifth Amendment itself does not prohibit all incriminating admissions; '[a]bsent some officially coerced self-accusation,

the Fifth Amendment privilege is not violated by even the most damning admissions.' " *Quarles* at 654, quoting *United States v. Washington*, 431 U.S. 181, 187, 97 S.Ct. 1814, 52 L.Ed.2d 238 (1977). In *New York v. Quarles*, the U.S. Supreme Court established a " 'public safety' exception to the requirement that Miranda warnings be given before a suspect's answers may be admitted into evidence." *Quarles* at 656. Under this "narrow exception to the Miranda rule," *id.* at 658, "police officers can ask a suspect questions without first giving *Miranda* warnings if they reasonably believe it is 'necessary to secure their own safety or the safety of the public.' " *Neyland* at ¶ 120, quoting *Quarles* at 659.

{¶ 12} " '[I]n order to establish that the exception is warranted in any given case,' " we have said, " 'the State must show that: (1) there was an *objectively* reasonable need to protect the police or the public, (2) from an *immediate* danger, (3) associated with a weapon, and that (4) the questions asked were related to that danger and reasonably necessary to secure public safety.' " (Emphasis sic.) *State v. Strozier*, 172 Ohio App.3d 780, 2007-Ohio-4575, 876 N.E.2d 1304, ¶ 25 (2d Dist.), quoting *State v. Jergens*, 2d Dist. Montgomery No. 13294, 1993 WL 333649, *2 (Sept. 3, 1993). Here, Officer Brownlee had an objectively reasonable need to protect himself and the other officer on the scene from an immediate danger associated with a firearm. And Brownlee's questions were both related to that danger and reasonably necessary to secure the officers' safety.

{¶ 13} A loaded weapon poses a danger to police officers, and it is for precisely this reason that Ohio law imposes transportation restrictions and notification requirements. R.C. 2923.16(C) prohibits a person without a concealed-carry permit from transporting a loaded firearm. R.C. 2923.16(E) requires a concealed-carry permit holder to notify law enforcement officers that he or she is carrying a handgun, and it also had

previously contained transportation restrictions for permit holders. About this previous statutory version, the Eleventh District has said:

> R.C. 2923.16(E)(1) requires a loaded handgun in the passenger compartment of a motor vehicle to be secured in plain sight in a holster on the licensee's person, or locked in a glove compartment or secured case. These restrictions reduce the possibility of the loaded firearm being acquired by a third person and increase safety for police officers approaching the vehicle. R.C. 2923.16(E)(3) requires the concealed carry licensee to promptly notify a law enforcement officer that a loaded firearm is in the vehicle. Likewise, this provision is designed to increase police officer safety by alerting the officer that a loaded firearm is in the vehicle.

*State v. Henderson*, 11th Dist. Portage No. 2010-P-0046, 2012-Ohio-1268, ¶ 37, quoting *State v. Brown*, 168 Ohio App.3d 314, 2006-Ohio-4174, 859 N.E.2d 1017, ¶ 19 (11th Dist.). Citing the quoted case, we have noted that "the limitations on transporting a loaded firearm in a motor vehicle * * * are rationally related to a legitimate government interest in safety—the safety of the person possessing the firearm, the safety of other passengers in the vehicle, the safety of people in other cars on the roadway, and the safety of police officers who encounter these individuals." *State v. King*, 2d Dist. Montgomery No. 24141, 2011-Ohio-3417, ¶ 28, citing *Brown*.

{¶ 14} The safety of police officers is a particular concern during protective searches. The Eighth Circuit Court of Appeals in *United States v. Williams*, 181 F.3d 945 (8th Cir.1999), held that a district court did not err by admitting the defendant's statement that identified the location of a gun. In that case, after the defendant was handcuffed,

police officers executing a search warrant for drugs asked him, without giving *Miranda* warnings, "[I]s there anything we need to be aware of?" The appellate court said that "[a]lthough [the defendant's] hands were cuffed behind his back when the officers asked him if they needed to be aware of anything else, * * * the officers could not have known whether other hazardous weapons were present in the apartment that could cause them harm if they happened upon them unexpectedly or mishandled them in some way." *Williams* at 953-954. The court found that the officers had information suggesting that the defendant may have possessed a gun or other firearm. "[T]he officers also had information indicating that [the defendant] had been arrested in the past on a weapons possession charge. Moreover, the officers had information indicating that [the defendant] was dealing drugs out of his apartment." *Id.* at 954, fn. 14. The court noted that "[a] gun is considered a 'tool of the trade' for individuals dealing in drugs." (Citation omitted.) *Id.*

{¶ 15} The same rationale applies to an officer conducting a protective search of a vehicle. A police officer has a reasonable concern that a hazardous weapon could be present in the vehicle that could cause harm if happened upon unexpectedly or mishandled during the search. Here it appears that a protective search was what Officer Brownlee had decided to do, and the search was justified. "[T]he search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." *Michigan v. Long*, 463 U.S. 1032, 1049, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983).

{¶ 16} Brownlee knew that Black had a CCW permit and that there was a nationwide felony arrest warrant for him related to "dangerous drugs." Brownlee testified that "when you have a warrant coming back with dangerous drugs, sometimes drugs leads to having weapons." (Tr. 12). It did not matter that Black was under police control. A protective search is justified even then because "if the suspect is not placed under arrest, he will be permitted to reenter his automobile, and he will then have access to any weapons inside." *Long* at 1052 (concluding that a protective search may be justified if a suspect is not placed under arrest, because "he will be permitted to reenter his automobile, and he will then have access to any weapons inside," and because a suspect might "break away from police control and retrieve a weapon from his automobile"). As Officer Brownlee told Black, Black was not under arrest but was being detained so that Brownlee could verify the warrant. If the warrant had been invalid, Black likely would have been permitted to drive away. Moreover, Black's passenger, Lee, was not detained and the officers had no reason to suspect her of any offense. There was a possibility that she, as the registered owner of the truck, would have been permitted to return to it. *See State v. Nelson*, 2d Dist. Montgomery No. 22718, 2009-Ohio-2546, ¶ 47 (concluding that a protective search was justified where it was likely that the passenger would be permitted to return to the vehicle because she was not suspected of anything). Any of these reasons justified a protective search out of concern for the officers' safety.

{¶ 17} Officer Brownlee's questions were related to the danger presented by a weapon and were reasonably necessary to secure the officers' safety. Brownlee asked Black, "Anything in the car I should know about?" "Anything dangerous?" Black responded, "Firearm," and Brownlee asked him where it was located. None of these

questions was investigatory; each was related to the danger posed by a weapon and was reasonably necessary to secure the officers' safety.

{¶ 18} Officer Brownlee's questions fell under the public-safety exception to *Miranda*. And once Black said that there was a firearm in the truck, the officers were entitled to search the truck and retrieve the handgun, under the Fourth Amendment's automobile exception. *See Nelson* at ¶ 46, citing *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). Therefore Black's statements and the handgun are not subject to suppression pursuant to *Miranda*.

### III. Conclusion

{¶ 19} The trial court did not err by overruling Black's motion to suppress, and the sole assignment of error is overruled. The trial court's judgment is affirmed.

. . . . . . . . . . . . .

FROELICH, J., concurs.

DONOVAN, J., dissenting;

{¶ 20} I disagree with the majority's analysis of the public safety exception. First, the majority suggests Black "likely would have been permitted to drive away" absent verification of the warrant. This assertion is belied by the initial statement of the dispatcher[1] and the fact that Black was also driving with a suspended Ohio license, both of which subjected him to arrest. His passenger, Lee, like Black, was cooperative. Lee was ordered to exit the vehicle, place her hands over her head and stand in the grass, posing no threat to the officers. Lee, as the registered owner, could have readily been

---

[1] The cruiser cam video reveals that the dispatcher initially advised the arresting officer regarding the Oklahoma warrant - "it's valid that he's wanted."

asked for consent to search the vehicle as well before Black was subjected to questioning without *Miranda* warnings.

{¶ 21} The public safety exception emphasizes the *immediacy* of the danger posed by a defendant. Although Black had a concealed carry permit and an Oklahoma warrant, these facts do not equate with an objectively reasonable belief that there is a need to protect the public or the officers from an immediate danger from a weapon. Furthermore, the officers were not in harm's way as both Black and Lee had been removed from the vehicle. The video establishes no other members of the public were at the scene nor near the vehicle itself.

{¶ 22} The majority relies in part on *Quarles*, 467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550, however it is distinguishable. In *Quarles*, the court was concerned that a loaded firearm utilized in a rape was carelessly discarded in a public place, posing an emergent threat to the public, including children. However, here the situation was completely under police control, no crime had just been committed, and there was no known missing weapon. I do not believe it was the intent of the *Quarles'* majority to provide law enforcement officers with broader latitude to conduct custodial questioning without *Miranda* whenever safety concerns *might* be implicated. To the contrary, the *Quarles* majority characterized the public safety exception as a "narrow exception." *Id.* at 658.

{¶ 23} The possession of a concealed carry permit may suggest an individual has a firearm in the vehicle, thus heightening safety concerns for the officers; however there was no specific reason to believe a gun's undetected presence posed an immediate danger to the police or the public in this factual scenario. As the Sixth Circuit emphasized

in *United States v. Williams,* 483 F.3d 425 (6th Cir.2007), the public safety exception is a two-prong test. *Williams* held that, for the public safety exception to apply, an officer "must have reason to believe (1) that the defendant might have (or recently have had) a weapon, and (2) that someone other than police might gain access to that weapon and inflict harm with it." *Id.* at 428. In my view, the second prong is not met in this case. Both Black and Lee had been secured outside the vehicle, Black's pat down of his person was complete, and he was handcuffed. Additionally, the car keys were in the possession of the officers.

{¶ 24} Furthermore, the *Williams* case from the Eighth Circuit relied upon by the majority is distinguishable. *See Williams*, 181 F.3d 941. The Eighth Circuit case involved a no knock nighttime search warrant. Williams, who looked frail and elderly but was known to have once been charged with *unauthorized* use of a weapon, was handcuffed and placed upright in bed upon six officers' entry into his bedroom. An officer asked, "is there anything we need to be aware of?" to which Williams answered there was a gun in the closet. A critical basis of the ruling was, "[a]lthough Williams' hands were cuffed behind his back when the officers asked him if they needed to be aware of anything else, the officers could not have known if any armed individuals were present in the apartment or preparing to enter the apartment within a short period of time." *Williams,* 181 F.3d at 953-54. In Black's case, there was no such threat of an ambush by an undetected third party.

{¶ 25} In my view, this is not a public safety exception case, thus such an unwarranted expansion of such a narrow exception should not be applied to our *Miranda* analysis. It is incumbent upon the State to establish such an exception applies. It would appear the State and the court equated a concealed carry permit with not only a statutory

requirement to announce the presence of a gun but also an affirmative relinquishment of *Miranda* rights.

{¶ 26} In fact, the State did not argue in its memo contra filed prior to the hearing (filed on November 1, 2016) that this case falls within the public safety exception, nor did it do so at the evidentiary hearing itself. When afforded a post-hearing opportunity to brief the motion to suppress, the State did not file a brief arguing the public safety exception applied. Rather, the State in its memo relied upon *State v. Vineyard,* 2d Dist. Montgomery No. 25854, 2014-Ohio-3846.

{¶ 27} The facts in *Vineyard* are clearly distinguishable. *Vineyard* was also a routine traffic stop, however Vineyard's CCW permit was known to the officers to be *expired* and they had a report Vineyard was known to have a gun during prior encounters with the police. Specifically this court noted:

The report further indicated that Vineyard had a gun during prior encounters with the police and that Vineyard's CCW permit *expired* a few months earlier. Officer Jones testified that an individual is required to notify the police officer at each encounter if the individual has a CCW permit and the location of the weapon. Vineyard had not informed Officer Jones that he had a CCW permit or that he had a gun in his vehicle. These facts were sufficient to create a reasonable and articulable suspicion that Vineyard might *unlawfully* have a firearm in his vehicle and to cause Officer Jones to be reasonably concerned for his safety. Accordingly, Officer Jones acted reasonably in requesting backup before concluding the traffic stop and in asking Vineyard about the possible presence of a gun in the vehicle prior to

allowing Vineyard to drive away. Vineyard's continued detention so that Officer Jones could confirm or dispel his concern that Vineyard might have a gun in his car without a *valid* CCW permit was not unlawful.

(Emphasis added.)   *Id.* at ¶ 25.

**{¶ 28}** *Vineyard* is distinguishable in that the police knew the CCW permit was *expired* and the officers possessed information Vineyard was known to have a firearm in prior encounters with the police. *Vineyard* was not decided on the basis of the public safety exception.

**{¶ 29}** A general, albeit ostensibly reasonable, concern for officers' safety is not the same as the public safety exception. Nor does the existence of a nationwide warrant necessarily convert it to such. We should not extrapolate from *Quarles* that police can compel self-incriminating statements. Black had already been patted down, there was no urgency, the questions were investigatory, and the officers had control of the scene, including the vehicle. The arresting officer expressed no concern for the general public or access to the vehicle. Black had been held at gunpoint and ordered to his knees. Most assuredly, this was a coercive setting. Notably "some courts, for example, admit responses to an officer's asking 'is there anything we need to be aware of?' Whereas others conclude that the same question is 'open ended' and 'framed to elicit an incriminating response.' " Gallini, *The Languishing Public Safety Doctrine,* 68 Rutgers U.L.Rev. 957 (Spring 2016). *See also State v. Strozler,* 172 Ohio App.3d 780, 2007-Ohio-4575, 876 N.E.2d 1304.   The cruiser cam video unequivocally establishes the officer initially asked Black, "anything in the car I should know about?" Accordingly, I would reverse and find Black should have been *Mirandized* prior to any questions about a

possible gun in the car.

Copies mailed to:

Nathaniel R. Luken
Brock A. Schoenlein
Hon. Michael A. Buckwalter